THOMAS SMITH, RESPONDENT, *v.* W. C. GRISWOLD, APPELLANT.

EQUITY JURISDICTION—FRAUDULENT SALES.—Courts of equity will entertain jurisdiction in cases of fraudulent sales where deceit is alleged in a sale, although the plaintiff might maintain an action for deceit.

PROOF—NO PREPONDERANCE OF, WHEN.—When there is an issue of fact, and the plaintiff supports the allegations in his complaint by his deposition and no other testimony, and the defendant in his depositions denies these allegations, there is no preponderance of proof. The court will not reject the testimony of a witness who is not in any way impeached.

APPEAL from Multnomah County.

Smith was the owner of three claims against the government of the United States, agregating one thousand three hundred and seventy-five dollars. They were for services as a packer and for the use of a horse in the volunteer service in the Indian war of 1854, nine hundred and sixty dol-

lars; for the use of a mule furnished in the Indian war of 1855–6, two hundred and thirty dollars, and for the value of the mule, lost while in such service, one hundred and eighty-five dollars.

In 1873 Smith employed B. F. Dowell to collect these claims from the government, and executed in his favor a separate power of attorney in each case.

The complaint alleges, in effect, that in June, 1874, Griswold, for the purpose of inducing Smith to sell to him these claims at less than their value and with the intent to defraud him, represented to Smith that no compensation would be allowed him for the loss of the mule, by the government or by the court of claims; that not more than three hundred dollars would be allowed for Smith's services as packer and for the use of the horse; that Dowell never could collect any of the claims, and that if he did collect them, Smith could not make anything out of him; that Dowell had transferred all his property to his family, and that he was insolvent; that the claims were worth no greater sum than three hundred dollars, and that he, Griswold, would not make anything out of them if he bought them at that figure, and the only reason why he was willing to give so much was that he wanted to " buck " against Dowell.

The complaint further alleged in effect, that Griswold had been engaged in prosecuting claims against the government, and that Smith was aware of this fact and placed confidence in his statements on account of it; that he was induced by these statements to sell Griswold all the claims for three hundred dollars; that Griswold collected them in full in September, 1874; that the statements of Griswold were false and fraudulent. The complaint prays that the contract of sale be set aside and for judgment for one thousand three hundred and seventy-five dollars, the sum of the claims, less the three hundred dollars received on the contract of sale, and interest.

The answer admits the purchase by Griswold of the claims for three hundred dollars, but denies all material allegations in the complaint, which go to charge Griswold with false or fraudulent representations, and alleges that the purchase

was in good faith, and that the three hundred dollars in gold was the full market value of the claims when the purchase was made. There was no testimony except that of the parties to the suit, their testimony going to sustain their respective pleadings.

The court found that the allegations of the complaint were true, and it set aside the sale and rendered judgment in accordance with the prayer of the complaint.

*Thayer & Williams and Rufus Mallory*, for appellant.

A suit can only be maintained when there is not a complete, plain and adequate remedy at law. (G. L. of Or., sec. 376; *Milton* v. *Scammon*, 52 N. H. 609; Story's Eq. Jur., sec. 33, 473; 3 Black. Com. 431; *Learned* v. *Holmes*, 49 Miss. 290.) If the plaintiff can recover at all, he has a complete remedy in an action at law for the deceit. (5 Cranch, 439; *Grant* v. *Bontz*, 2 Cranch, 184; *Shaffer* v. *Slade*, 7 Blackf. 178; *Milton* v. *Scammon*, 52 N. H. 609.) The alleged false representations are mere statements of opinion, for which no action or suit will lie. (*Ellis* v. *Andrews*, 56 N. Y. 85; *Van Epps* v. *Harrison*, 5 Hill, 63.)

This suit will not lie for a false representation when the plaintiff, by the exercise of common prudence, could have learned the fact. (*Slaughter* v. *Gleason*, 13 Wall. 379; *Moore* v. *Subeville*, 2 Bibb, 602; *Sitzan* v. *Wilson*, 4 Iredell, 501.) The plaintiff did not establish his cause of suit by preponderance of evidence. There was no testimony as to what was said when the bargain was made, except that given by plaintiff and defendant. To say the least, they are entitled to equal credit, and their statements are in direct conflict. In such a case the plaintiff must necessarily fail.

*A. C. Gibbs and B. F. Dowell* for respondent.

Fraud and deceit are always good grounds for equity jurisdiction. The legal and equitable maxim is *suggestio falsi* or *suppressio veri* amounts to fraud and will avoid a contract at law, or be a good ground of relief in equity, whenever the plaintiff is deceived by the defendant to his injury. (2

Tucker's Com. 421; 1 Story's Eq. Jur. sec. 184.)    At common law trespass or trover would lie in all cases by the lien creditor against the debtor or his assignee, and for fraud and deceit the action of deceit would lie.    In modern times a special action on the case or bill in equity has superseded, the action of deceit, and for all contracts expressed or implied, for money, the action of assumpsit has been substituted for the action of deceit or a special action on the case. Courts of equity take jurisdiction in such cases, not on the ground that there is no remedy at law, but on the doctrine that Griswold held the funds in trust for the plaintiff, and its remedy is more adequate than the remedy at law.

In cases like those described in this complaint, it would have the assignors and Griswold both before the court, and if equity demanded it at the hearing, it would decree for each of the assignors and Griswold to pay the plaintiff, and also render a decree over in favor of Griswold; or annul the contract, and compel Griswold, on account of his fraud, to pay the whole amount he received, less the amount he paid to each of his assignors. (1 Story's Eq. Jur. sec. 451; 2 Id. sec. 1226.)    The action of assumpsit and a bill in equity are frequently concurrent remedies.    (1 Story's Eq. Jur. sec. 60.)    Where Stewart had a mail contract, and he assigned it to Bradley, and afterwards Stewart gave an order on the postmaster-general for six hundred and twenty-five dollars, to one Root, who collected the money, it was held that Root was liable to Bradley for the amount he collected on the order.    (*Bradley* v. *Root,* 5 Paige, 632.)

Mr. Meigs, one of the ablest attorneys that ever practiced law in Tennessee, truly says: "Many *dicta* are to be found in the books confining this action for money had and received to cases where they say there has been privity of contract, as between payee and maker of a note, payee and acceptor of a bill, indorsee and immediate indorser; and this doctrine being advanced at *Nisi Prius,* 1 Camp. 175, has been introduced into the text of some editions of 'Chitty on Bills.'    But it is not supported by the decided cases, as may be seen from *Grant* v. *Vaughan,* 3 Burrow, 1525-9; *Fatlock* v. *Harris,* 3 T. R. 174; *Raborg* v. *Peyton,* 2

Wheaton, 385; *Pierce* v. *Crafts*, 12 Johnson's R. 90; *Dickson* v. *Cunningham*, M. and Y. 221." (Meigs' Digest, p. 93, sec. 9.)

In the case of *Raborg* v. *Peyton*, Judge Story says: "The old doctrine upon this subject has been very considerably shaken in modern times. An *indebitatus assumpsit* will now lie in favor of the payee against the acceptor; and it is generally true that where such an action lies, debt will lie." We see no inconvenience in adopting a rule more consonant to the just rights of the parties, as recognized in modern times. In so doing we apply the well-settled doctrine that debt lies in every case where the common law creates a duty for the payment of money, and in every case where there is an express contract for the payment of money. (4 Wheat. 175.)

In the case of *Dickson* v. *Cunningham*, reported in Martin Yerger's Report, 221, Judge Catron says: "It is objected by counsel, that there is no privity of contract between the parties; and several authorities were cited to show that *indebitatus assumpsit* will not lie, except between privies. To this objection there are two answers—first, there is a legal privity of contract between the parties in this case; secondly, it is not true that the action for money had and received can only be grounded on privity of contract. It is the proper remedy to recover money obtained by fraud or deceit." This case was a very complicated, fraudulent transaction. It nearly equaled Griswold. The Reporter makes this syllabus of the case: "Where the defendant was indebted to A., who was indebted to B., who was indebted to plaintiff—and they all met together and defendant aided and assisted A. in successfully assigning to the plaintiff a debt, which belonged to neither; and by this means, A. paid his debt to B., and B. paid his debt to the plaintiff, and A. credited defendant, held, that plaintiff might disaffirm the contract and maintain an action for money had and received against the defendant." (M. and Y., p. 203.)

Judge Crabb, in delivering the opinion of the court, tries to sum up the fraud in a few words: "That Dickson did have and receive money, which, by law, was for the use of

Cunningham.  By aiding Garner in successfully assigning to Cunningham a suit which belonged to neither, Dickson contributed towards Cunningham's giving a credit to Rhea in account, in other words paying money to Rhea; and Rhea giving Garner a credit, in other words, paying money to Garner; and Garner giving Dickson a credit, in other words, paying money to Dickson.  It was no strained inference, then, but one believed to be authorized by the decided cases, that Cunningham's money went to Dickson.  The whole transaction being disaffirmed, as grounded in *mala fide*, Dickson was the man who had the money; he was the proper person for Cunningham to sue." (Id. 220.)  There is more privity between the plaintiff and Griswold in these actions than there was between Cunningham and Dickson.

Judge Tucker says: "This action lies to recover back money embezzled, or which any person has been defrauded of, by cheating or otherwise." (2 Tucker's Com., 132.)  The action of assumpsit is an equitable action and it will lie at common law, whenever a man has received money, which, equitably, belongs to the plaintiff. (*Thallheimer* v. *Brinker-hoff*, 3 Cow. 624; *Mier* v. *Schenck*, 3 Hill, 228; Story on Agency, sec. 397.)

The case of *Upton* v. *Vail*, 6 Johns. 181, was an action on the case, and Chief Justice Kent, after reviewing the authorities, says: "I place my opinion upon the broad doctrine that fraud and damage coupled together will sustain an action."  Or a suit in equity could be sustained on the lien for an account and for the fraud. (Story's Eq. Jur., sec. 506.)  Inadequacy of price is a badge of fraud. (1 Bac. Abridg. 161; 1 Story's Eq., secs. 246; Bump on F. C., 43; *Sheton* v. *Church*, 38 Conn. 416; 39 Ill. 264; Johns. Ch. 35.)  Misrepresentations make acts void. (1 Story's Eq. Jur., sec. 191; Smith's Man. of Com. Law, 67; Chitty on Cont. 753; 2 Parsons on Cont. 774.)

By the Court, BOISE, J.:

The first question presented for consideration is, has a court of equity jurisdiction of this case?  It is claimed by the appellant that the plaintiff has a complete remedy for the injuries complained of in an action for deceit.

In this case there had been a sale of certain claims against the United States by the plaintiff to defendant (Griswold), and a bill of sale executed by the plaintiff, which made Griswold the legal owner, and enabled him to collect the same for his own use. The complaint alleges that Griswold in order to induce the plaintiff to sell these claims, amounting to one thousand three hundred and seventy-five dollars, for the sum of three hundred dollars, falsely represented to him that no allowance would be made for the use of a mule, which constituted one of the claims, and in substance that no more than three hundred dollars, or thereabouts, would be allowed and paid for all these claims, and that such representations were false, and that the defendant knew them to be false when he made them, and that by reason of such representations the plaintiff was induced to part with his property. These facts might be the foundation of an action for deceit, and the plaintiff in such action claim as damages the balance of said claims above three hundred dollars. And the question is, can he maintain this suit in equity, in in which he asks that said bill of sale be set aside and canceled, and the defendant be declared his trustee for the balance of the one thousand three hundred and seventy-five dollars, after deducting the amount paid, three hundred dollars. It would be necessary to invoke the aid of a court of equity to cancel this bill of sale, if that is necessary, to complete relief, but it is urged that, it appearing from the complaint that the defendant has the money, and the amount is certain, it is not necessary to have any accounting between the parties, that the remedy by an action would be complete, and that nothing would be gained by having this sale rescinded and this bill of sale canceled. We think that as this bill of sale transferred the property to defendant and was evidence of the sale, the plaintiff had a right to seek redress in a court which could rescind the contract and place him in the condition as to the ownership of the property in which he was when the sale was made. Such jurisdiction is exercised in courts of equity, notwithstanding there is a remedy at law. (Story's Eq. Jur., secs. 190, 191.)

It is also insisted that the complaint does not state facts sufficient to constitute a cause of suit. That whatever false representations were made by Griswold were mere matters of opinion as to the value of these claims. The complaint says he represented that nothing would be allowed for the mule, and not more than three hundred dollars would be paid on all the claims, and that he (Griswold) knew these statements were false. These are sufficient allegations of fraud to sustain the complaint. If it had been alleged that he said that in his opinion no pay would be allowed for the mule, and that no more than three hundred dollars would be paid in all, and it were further alleged that when he pretended to express such an opinion he knew to the contrary, this would have been deceit, and have been *suggestio falsi*, and would have made him responsible so that he could not profit by his fraud.

It is further suggested by the defendant's counsel that the plaintiff ought not to recover, because that by proper diligence and prudence he could have known that his claims were allowed to the amount of one thousand three hundred and seventy-five dollars. That a court of equity will not aid a person who had an equal opportunity to be informed as to the subject-matter of the contract. And it is true, as said by Judge Field in the case of *Slaughter* v. *Gleason*, 13 Wall. 383, cited by appellant, that "a court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness when the means of knowledge are at hand and equally available to both parties, and the subject of the purchase is alike open to both parties for their inspection." But this is not such a case. The subject of the purchase was not alike open to the inspection of both parties. The complaint says that Griswold knew his representation that nothing would be allowed for the mule was false. It appears that at the time of the sale he had information of the allowance of these claims which was not equally possessed by the plaintiff, and of which he had then no means of knowledge at hand. The evidence was at Washington city, and it makes no difference that he could have obtained it

before the defendant prepared to purchase. The rule as to voluntary blindness applies only to cases where the parties have equal opportunities to know, at the time of making the trade or pending negotiations thereto.

We are of opinion, therefore, that plaintiff is entitled to a decree, provided the defendant made the false representations alleged and the plaintiff was thereby induced to part with his property. And this being asserted on the part of plaintiff and denied by the defendant, we will have to look into the testimony to determine whether the plaintiff has proved his case by a preponderance of testimony. The only evidence as to the false representations is contained in the deposition of the plaintiff, who swears that they were made and gives the circumstances and the times and places when they were made.

The defendant in his deposition admits that he met the plaintiff at the time and place testified to by the plaintiff, and admits that he bought this claim for three hundred dollars and that he told the plaintiff that Dowell was debared from practicing at the departments, but positively denies that he made the false representations complained of. Both these parties had sworn to the same facts in their pleadings that they testified to in their depositions.

The question is, Has the plaintiff proved his case by a preponderance of evidence? If the parties are entitled to equal credit there is no preponderance, and the case of the plaintiff is not proved. We suppose it may be claimed that the fact that Smith sold his claim for less than its value is a presumption in his favor, but the fact that a party has sold his property at a price less than its real value will not defect a sale unless the purchaser made fraudulent representations which induced the sale, and the fraudulent representations must be proved and will not be presumed, so the only question after all is, were they made, and in order to find that fact from the evidence before us we must reject the evidence of the defendant. He is not impeached, and the court cannot reject his evidence without violating the rule that the evidence of a witness not impeached must be considered, and we think that when parties come and submit a case—

each supporting his pleading solely by his own testimony—there is no preponderance of testimony.   The court might as well decide that the sworn complaint of the plaintiff shall prevail over the sworn one of the defendant.   And in order for the plaintiff to overcome the evidence of the defendant, he should produce some other evidence to corroborate his testimony, else the case stands as to the preponderance of proof where it did when the issue was made.

The case will be reversed and the plaintiff's bill dismissed.