Decided 20 November, 1899.

## ROLSTON v. MARKHAM.

[58 Pac. 1099.]

ASSUMING MORTGAGE—EVIDENCE.—Two grantees of land, under a deed stipulating that they were to assume a mortgage on the land, conveyed the land to defendant by a quitclaim deed, in which defendant did not assume the mortgage. The grantees testified that defendant agreed to assume the mortgage. Defendant testified that he refused to assume the mortgage when the grantees refused to execute a warranty deed, and his testimony was corroborated by the draftsman of the quitclaim deed. There was evidence of contradictory statements by the draftsman. *Held*, that the evidence was not sufficient to show that defendant had assumed the payment of the mortgage.

From Washington: THOS. A. McBRIDE, Judge.

Suit by F. Y. Rolston, administrator, against Simon S. Markham and others. Decree for plaintiff, and defendants appeal.        REVERSED.

For appellants there was a brief over the name of *Smith & Bowman*, with an oral argument by *Mr. Benton Bowman*.

For respondent there was a brief and an oral argument by *Mr. Samuel B. Huston*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is a suit to foreclose a mortgage, and the only question presented by the record is one of fact—whether the defendant Henry Hamilton assumed, by verbal promise, the payment of the mortgage in question as a part consideration of the purchase price of the premises covered thereby. On March 26, 1895, Simon S. Markham, and Cynthia, his wife, conveyed the premises to Thomas Madi-

gan and J. D. Rode, by warranty deed, wherein they covenanted to warrant and defend the same against all lawful incumbrances, except the mortgage of plaintiff. There was at the time a prior mortgage upon the premises in favor of one Cox for $500, which was not excepted from the covenant. Madigan and Rode conveyed to the defendant Hamilton without covenants of warranty. It is alleged, however, that Hamilton, as part consideration for said deed, assumed and agreed, by verbal promise, to pay plaintiff's mortgage, and hence he seeks to obtain a personal decree against Hamilton for the amount due thereon.

It seems to be conceded that a verbal promise by a purchaser to assume and pay a mortgage upon the premises conveyed is valid, and is susceptible of enforcement in equity, not only by the grantor, but by the holder of the mortgage, and that a personal recovery may be had against the grantee. We will take it for granted, therefore, in so far as this case is concerned, that the law is as the parties have conceded it to be. We may go, then, to the question of fact.

Prior to the execution of the deed to Hamilton, Rode had executed and delivered to Madigan a deed to his interest in the premises, which Rode says was given clear of all incumbrances. But this deed had not been recorded when Hamilton's deed was executed. Rode testified, in effect, that Hamilton wanted him to sign the deed with Madigan, to save the necessity and expense of recording the deed which he had theretofore given to Madigan of his interest, and that the understanding was that, if he would sign with Madigan, he (Hamilton) would assume the mortgage. On cross-examination, when asked touching the language used by Hamilton, the witness said : ''Well, he told me about he bought Tom Madigan—

36 Or.—8.

his interest—for five dollars, and that he was to assume the mortgage to Rolston. That was what was the conversation; and he wanted me to sign the deed to save three or four deeds, and get the other deeds recorded—a certain amount of money to get those others recorded that I made to Madigan; and I went and signed the deed for accommodation.'' Mr. Madigan testified, on his examination in chief, that Hamilton gave him $5, and agreed to assume the Rolston mortgage, upon which was due the sum of $385, and interest. On cross-examination, he said that the conversation occurred about April 11, at his tinshop; that he made the deed that day, or, possibly, the day before; and that a conversation of like nature—the same, in substance—took place between him and Hamilton in Edward Naylor's office, where the deed was drawn. Mr. Hamilton testified that he went into Mr. Madigan's shop one evening, and found he was going to buy the land (supposedly of his partner, Rode), and that he would like to get rid of it; that he told Madigan he would give him $5 for the same; that Madigan wanted him to pay the mortgage, but he did not tell him whether he would or not, or anything about it; that some two weeks thereafter he went into Edward Naylor's office, and had the deed drawn up, with covenants similar to the Markham deed; that Madigan went in to sign it, but, when he saw it, refused to sign, and said ''he wouldn't warrant nothing, he wouldn't sign nothing,'' and wanted him to pay the Rolston mortgage, but he told him he would be not be responsible for anything; that a quitclaim deed was then drawn up, and subsequently executed by Madigan and Rode; and that he never agreed to assume the Rolston mortgage. Edward Naylor testified that, before the deed was drawn, Madigan and Hamilton had been talking about a land trade. That he thought Hamilton was buying from Madigan. That he drew up a warranty deed,

using the Markham deed in order to get the description. That Hamilton and Madigan came in soon, and desired to read the deed. That Madigan objected to the warranty part, and said that he "didn't warrant anything," and "I will give you just what I have—just my right, title, and claim ;" to which Hamilton replied, "Then, Tommy, if you don't warrant anything, I won't be responsible for anything." That they talked a few minutes touching the signature of the deed, and Madigan said, "I will give you just what I have—just my right, title, and claim." That he (Naylor) then suggested that he make a quitclaim, which seemed to be satisfactory to Madigan, but that, instead of drawing up a quitclaim, he used the ordinary form for a warranty deed, crossing out the covenant. This is about all the testimony pertinent and relevant to the issue, except it was shown by two witnesses that Naylor, prior to the time of giving his testimony, stated that he did not remember what was said on the occasion referred to. Naylor does not deny the statement attributed to him, but testified that he made it as an evasion, because he thought the witnesses were endeavoring to pry into affairs which he was under no obligation to disclose.

The burden of proof was with the plaintiff to establish the verbal assumption and promise of Hamilton to pay the Rolston mortgage as part consideration for the purchase price of the premises, and in this it does not appear that he has succeeded. The statement of Madigan and Rhode, that Hamilton agreed to assume the payment of the Rolston mortgage when the $5 was paid, was contradicted by Hamilton. But this was not the consummation of the agreement, nor was it consummated until the time of the drawing and execution of the deed at Naylor's office. There arises another conflict in the testimony touching the negotiations at this period. Hamilton and Naylor testified, in effect, that the idea of Hamilton's

assumption of the mortgage was abandoned when Madigan refused to sign the warranty deed which Naylor had drawn, and that the final understanding was that Madigan would give a quitclaim deed of his right, title, and interest only, and Hamilton would not be responsible for the mortgage. This rendition of the understanding is disputed by Madigan. If the witnesses were of equal credit, plaintiff could not recover upon this state of the proof, because his proof cannot be said to preponderate : *Smith* v. *Griswold*, 6 Or. 440.

True, there was an effort to cast discredit upon Naylor's testimony, but we do not give much weight to that, as Naylor's explanation of his denial of recollection touching the details of the transaction is reasonable, and the manner of the evasion is not uncommon among business men. Besides, the attending circumstances are in harmony with Hamilton's version of the understanding. The Markham deed contained an express stipulation, excepting the Rolston mortgage from the operation of the covenant against incumbrances, and Naylor had drawn under Hamilton's direction, a deed containing covenants of warranty. This deed Madigan refused to execute, saying that he "wouldn't warrant anything," and it was then Hamilton told him he would not be responsible for anything. Then the quitclaim was drawn and executed, which wholly omitted any mention of the assumption of the payment of the mortgage by Hamilton. This is strongly corroborative of Hamilton's and Naylor's version of the transaction. The Markham deed had such a stipulation, and it is reasonable to suppose that, if such was the understanding of these parties, it would have been embodied in the deed given Hamilton. We are impressed, not only that plaintiff has failed to sustain his cause by the weight of the testimony, but that, on the other hand, the preponderance

is with Hamilton. The decree of the court below will therefore be reversed, and one here entered in accordance with this opinion.    REVERSED.

Decided 7 August, 1899.