SCHNEIDER and another *v.* FOOTE and another.

*(Circuit Court, D. Connecticut. May 24, 1886.)*

1. VENDOR AND VENDEE—RESCISSION—FRAUD—ELECTION.

In a bill in equity by a vendee for the rescission of a deed on the ground of the vendor's fraud and misrepresentation, relief in equity cannot be granted except the plaintiff have, within a reasonable time after the discovery of the fraud, elected to disaffirm the contract. and has, either before or at the trial, returned, or offered to return, the personal property received, and reconveyed, or offered to reconvey, the real estate of which he has the title.[1]

2. SAME—BILL IN EQUITY—REPLEADER.

Where a complaint asking both damages and equitable relief against a vendor's fraudulent sale of real and personal property is removed to a federal court, and a bill in equity is filed therein for the equitable relief, and is tried, the action at law is not abandoned by the repleader, but remains on the common-law side of the court.

3. SAME—RESCISSION—INJUNCTION—ACTION AT LAW.

A bill in equity asking for relief by the rescission of a deed, and of a note and mortgage given in part payment, on the ground of the vendor's fraud, and also by injunction restraining the transfer of the note and mortgage, although

[1] See note at end of case.

denied so far as regards the rescission, will be granted so far as regards the injunction, when the plaintiff has instituted an action at law for damages, which can be set off against the note and mortgage, and when the defendant is a non-resident, and not a property owner to any amount.

In Equity.

*W. F. Wilcox*, for plaintiffs.

*Charles H. Briscoe* and *James P. Andrews*, for defendants.

SHIPMAN, J. This suit was brought to the state court, the complaint alleging the defendants' fraud in the sale of real and personal property to the plaintiffs, and asking both for damages, and for equitable relief by a rescission of the deed, or of the note and mortgage which were given in part payment of the purchase price, and by an injunction restraining the transfer or assignment of the note and mortgage. The suit was removed to the circuit court, where the plaintiffs filed a separate bill in equity, the action at law remaining also in court. The bill in equity has been tried.

The facts are as follows: In January, 1884, Mrs. Caroline Foote had the legal title to a farm of 75 acres in Killingworth, in this state, which her husband, John H. Foote, had previously purchased for $700, and had conveyed to his wife as a gift. Her husband, as her agent, and with her knowledge and approbation, concluded to sell the farm, and took measures to bring it to the attention of German immigrants to this country. In February, 1884, the notice of the two plaintiffs, who were Germans, one of whom had been in this country about nine months, and the other about six months, was called to the plaintiff's advertisement of the farm, one-half of which was represented to be clear, and the other half to be in woodland, and both went to see the defendant John H. Foote at his house in Brooklyn, New York. He praised the farm; said that it was one-half clear, and the other half woodland; that it had an ice-house, and that a good mowing-machine belonged to it; and the three went to Killingworth in a couple of days to examine it. Examination was necessarily imperfect, as there was snow upon the ground. The farm is an old, worn-out rough farm of 75 acres, of which only 10 or 12 acres, in the immediate vicinity of the house, are clear land, and are now capable of cultivation. The said John H. Foote pointed out to the plaintiffs, as embraced in and belonging to the farm, three lots of cultivated, cleared land, which he said were good grass lots, and a fourth lot which had been grown over with bushes. These lots, containing 12 acres, belonged to Norris Griswold. Said Foote also showed to the plaintiffs, as belonging to the farm, two cultivated, cleared lots, containing five acres, which actually belonged to Ezra G. L'Hommedieu. These six lots were near the defendant's dwelling-house, and adjoining her lots, and, if they had belonged to the farm, would have greatly enhanced its value. Said Foote also said that a certain ditch was the line, which included a little strip of said Gris-

wold's land. This incorrect representation was not of importance. He also pointed out as his own a mowing-machine which was under the shed, and which he said cost $125. It belonged to Norris Griswold. The ice-house never existed, but said Foote said it could not be visited on account of the water upon the land where it stood. He told them that they could sell all their produce to the summer hotels, about a couple of miles off, and that a railroad was coming in the neighborhood which would enhance the value of the farm. There were and are no summer hotels within seven or eight miles or more of the farm, and no railroad was ever projected in its neighborhood. I omit the representations which he made of the condition of the buildings and of the land which really belonged to the farm, and of the wood upon it, and of the amount of hay which could be produced, and of the amount and value of cranberries which grew upon the farm, because they may be considered justifiable words of commendation, or false statements of opinion, which are not the subject of an action for deceit, or incorrect statements, the incorrectness of which could be discovered by the plaintiffs upon inspection.

The plaintiffs were entirely ignorant of farming or of farming land, were confiding and trustful, believed all that said Foote told them, and would not have bought said farm except for said ignorant and innocent trustfulness. They bought the farm, and the personal property specified in a bill of sale, which the said Caroline Foote executed for the sum of $1,600; giving to her $600 in cash, and their note for $1,000, payable in five years from March 20, 1884, to her order, with 6 per cent. interest per annum, payable semi-annually, secured by a mortgage of said farm. By said bill of sale, the said Caroline purported to sell to the plaintiffs a mowing-machine and an ice-house.

Neither the market value nor the actual value of said farm, and of the personal property which was sold and delivered, exceeded $700 or $750. The misrepresentations of the said John H. Foote in regard to the farm, including the said lots of said Griswold and of said L'Hommedieu, and in regard to the mowing-machine and the ice-house, were influential in inducing the plaintiffs to buy the property. They were defrauded by the said Foote's intentional fraud, whereby they were deceived in essential particulars. They discovered the fraud, in regard to the non-ownership by the defendants of the Griswold and L'Hommedieu land, and of the mowing-machine, and the non-existence of the ice-house, in two or three weeks after they entered upon the premises, which was about the first of April, 1884. They wrote to one Thielke, a cousin of said Schneider, who lived in New York city, and who accompanied them when the first call upon the Footes was made, and also when the papers were executed, complaining of the difference in the cleared portion of the land, and in regard to the mowing-machine, who went to see Mr. Bischoff, the lawyer at whose office the papers were executed, who asked for the papers.

Thielke wrote to them to send the papers, but they were afraid to do so. They complained, in regard to the misrepresentations, to Mr. Foote in April and in June, and to Mr. and Mrs. Foote in September, 1884, but not earnestly or vigorously, and never requested a refund of the $600, or a rescission of the contract. They paid the interest due in September, 1884, as it was due, but have not paid the interest due in March, 1885. They were entirely ignorant in regard to their rights until they were taken by one of their neighbors, and introduced to a lawyer some time in the early part of 1885. They did not tender a deed of the farm to the defendants either before or at the trial, and never disaffirmed or rescinded the contract except by bringing the complaint, which is dated April 8, 1885, and did not, before or after the first was brought, do or say anything to indicate that they did not wish to retain the property. On the other hand, a letter of theirs to the defendant, dated March 27, 1885, is inconsistent with the idea of disaffirmance.

The condition of the case is this: Both real and personal property were sold, by one agreement of sale, for a round sum. The plaintiffs were greatly defrauded by the intentional and fraudulent misrepresentations of one of the defendants, who was the husband and the known agent of the other defendant. The contract was not disaffirmed, except by the bringing of a complaint asking damages on account of the fraud and also equitable relief.

The rule of law in regard to the right of the vendee of real or personal property to rescind the contract on account of the vendor's fraud, or, affirming the sale, to bring an action for damages for the fraud, has been often given. It is stated in *Kellogg* v. *Denslow*, 14 Conn. 411, as follows:

"A sale may also be rescinded by the vendee, in a reasonable time, if the vendor is guilty of fraud in misrepresenting the article sold. But in all cases of fraud or warranty, where the vendee has the right of disaffirmance, he may keep silence, and bring his action in affirmance of the sale, either for the fraud or upon the warranty." *Whitney* v. *Allaire*, 4 Denio, 554; *Mallory* v. *Leach*, 35 Vt. 156; Bigelow, Fraud, 408, 413, 426, 427.

If any unpaid notes have been given to the vendor for the purchase, the damages arising from the fraud may be set up in partial or complete defense against the suit of the vendor upon the notes.

In this case, the prayer for a rescission of the deed cannot be granted, because it was incumbent upon the plaintiffs, within a reasonable time after the discovery of the fraud, to elect to disaffirm the contract, and, if such election may be considered to have been shown by the institution of the suit, it was also necessary for them, at some time, whether before or upon the trial it is not necessary to decide, to return, or to offer to return, the personal property which was received, and to reconvey, or to offer to reconvey, the real estate of which they had the title. An attempt, by the aid of a court of equity, to rescind the contract is ineffectual while the plaintiff is holding firmly

upon the property which is the subject of the contract. There must be not only an election to disaffirm, but the plaintiff must, so far as is practicable, revest in the vendor the title to the property which had been vested in the vendee by the voidable contract. *Pearsoll* v. *Chapin*, 44 Pa. St. 9; *Baker* v. *Lever*, 67 N. Y. 304. The note and mortgage cannot be canceled, because the attempt to cancel proceeds upon the ground that the contract for the sale of the property was voidable on the ground of fraud. If voidable, it must, as a general rule, be rescinded entirely, and there cannot be a partial rescission. "It is true that, generally, a part of a deed or contract or sale cannot be avoided without avoiding the whole." *Veazie* v. *Williams*, 8 How. 134. The decree in the *Veazie Case*, and which was not in accordance with the general rule, was an exceptional one, and proceeded upon the peculiar equities of the case, and upon the ground that in the contract there was a distinct line where fraud began and good faith ended.

So far forth as the bill in equity relates to rescission, no decree can be granted, but the plaintiffs must be remitted to their action at law for damages, without prejudice by reason of the refusal to rescind the contract. *Rogers* v. *Durant*, 106 U. S. 644; S. C. 1 Sup. Ct. Rep. 623. The original complaint was for both legal and equitable remedies. By the repleader in the equity part of the case, the action at law was not abandoned, but still remains on the common-law side of the court. *Fisk* v. *Union Pac. R. Co.*, 8 Blatchf. 299; *La Mothe Manuf'g Co.* v. *National Tube Works*, 15 Blatchf. 432; Dill. Rem. Causes, § 47.

Inasmuch, however, as the defendants are non-residents, and Mrs. Foote is apparently not a property owner to a large amount, and has the note for $1,000, which is for a part of the purchase money, and can be transferred by indorsement to a *bona fide* holder, without notice of any alleged infirmity, it is right that the transfer should be prevented by injunction, so that the rights of the plaintiffs may remain unimpaired. The bill in equity, to that extent, should be sustained, and the temporary injunction should be made permanent. *New York Dry Dock Co.* v. *American Life Ins. & Trust Co.*, 11 Paige, 384.

### NOTE.

The intention to rescind a contract must be manifested by some positive act. Davidson v. Keep, (Iowa,) 16 N. W. Rep. 101.

Where the evidence shows that a party was induced to make a certain purchase by false and fraudulent representations as to the value of the property, he is entitled to a decree for the cancellation of notes given as part consideration for the property. Parks v. Burbank, (Iowa,) 12 N. W. Rep. 729.

It is said in Seeley v. Reed, 25 Fed. Rep. 361, that a court of equity will decree a rescission of a contract obtained by fraudulent representations or conduct of one of the parties thereto, on the complaint of the other, when it satisfactorily appears that the party seeking the rescission has been misled in regard to a material matter by such representations, to his injury or prejudice.

Where a plaintiff comes into a court of equity asking for the rescission, in whole or in part, of a contract, or to be relieved of a portion of a contract, and the taking of an account is necessary for the ascertainment of the sum to be repaid, or the sum to be

liquidated by an adjudication based on evidence of facts independent of the terms of the contract itself, an offer to refund such sum as shall be decreed is a sufficient offer to do equity. Sutter St. R. Co. v. Baum, (Cal.) 4 Pac. Rep. 916.