## PRESCOTT *et al.* v. BROWN.

### No. 1343.   Opinion Filed· December 12, 1911.

### (120 Pac. 991.)

1. **PATENTS — Sale of Rights — Validity — Fraud.** Defendant's amended answer charged that the vendors of a patent right in and to a certain post mold falsely represented to the vendee that the invention was new and novel and patentable; that it was the only mold in existence that would mold in a satisfactory manner more than one post at a time; that there was a great demand for such machines among the farmers; that the owner of the right would enjoy a monopoly of the trade and be thereby enabled to control the output of cement posts; that one E. (a man well known to vendee as a shrewd and successful business man, and in whose business ability the vendee had great confidence) was then organizing a company for the purchase of all the balance of the unsold territory in the United States for $35,000 or $40,000, and that unless the vendee purchase at once she would not have the opportunity to again buy; that vendee relied upon such representations and· believed them to be true, and by reason thereof was induced to and did execute her note and mortgage in the sum of $4,000. Held good as an answer and cross-petition in an action to foreclose a real estate mortgage and to recover on a note secured thereby.

2. **APPEAL AND ERROR—Review—Questions of Fact.** Plaintiff specifically denied the allegations of fraud thus raised by defendant's amended answer. Held, that the issue of fraud thus raised presented a question of fact for the jury, and where there is evidence reasonably tending to support the verdict this court will not interfere or disturb such finding.

3. **MORTGAGES—Validity—Fraud—Caveat Emptor.** In an action to foreclose a real estate mortgage secured by fraud and deceit, by the positive fraudulent misrepresentations made by the vendor with intent to deceive, the doctrine of caveat emptor, which is not founded on a high standard of morals, will not avail as a shield and protection to the deliberate frauds and cheats of sharpers, and such doctrine shall not be extended further than it has been carried by previous decisions, even with respect to "dealers' talk," "matters of opinion," "representations as to values," etc.

4. **VENDOR AND PURCHASER—Elements of Fraud—Diligence of Person Defrauded.** A vendee has a right to act on the positive representations of existent material facts made by a vendor, even though the means of knowledge were open to him. The real question in such matters is, Was the party in fact deceived by the false representations? "It is as much an actionable fraud will-

fully to deceive a credulous person with an improbable story as it is to deceive a cautious and sagacious person with a plausible one.''

(Syllabus by Robertson, C.)

*Error from District Court, Kay County; W. M. Bowles, Judge.*

Action by A. D. Prescott and another against Jennie Brown. Judgment for defendant, and plaintiffs bring error. Affirmed.

*Love & Wright, Moss & Turner,* and *Sam K. Sullivan,* for plaintiffs in error.

*William S. Cline* and *C. L. Pinkham,* for defendant in error.

Opinion by ROBERTSON, C.   This action was begun in the district court of Kay county on November 26, 1907, by A. D. Prescott and H. P. Farrar, to recover upon a certain promissory note given by the defendant in error, Jennie Brown, on November 15, 1906, due in one year, payable to the order of John E. Thorpe at the Farmers' National Bank of Newkirk, Okla., with interest at 6½ per cent. from date, and asking for the foreclosure of a certain real estate mortgage given to secure the payment of said note, and covering the S. E. ¼ of section 26, township 28 north, range 2 east, in Kay county, Okla.   The mortgage was duly recorded in the office of the register of deeds of said county on November 15, 1906.   Thereafter Thorpe, by written assignment, sold and transferred said note and mortgage to the plaintiffs in error, the assignment being recorded February 19, 1907. Thereafter defendant answered, and later, by leave of court, filed an amended answer to the petition in foreclosure, and alleged in substance that she executed and delivered the note in question, but that said note was given to Thorpe for a one-half interest in a patent post mold for certain states and territories, which said mold had been theretofore patented by one F. M. White; that said mold for which the note and mortgage were given was not subject to be patented, and was not the invention of the said White; that said mold had long been in use, in different parts of the United States, and for a period longer than two years prior to the time White made application for a patent

for the same, and that said patent was without force and effect, and was void. For further defense she alleged that the said John E. Thorpe and F. M. White, for the purpose of inducing her to purchase said pretended patent right, for which the note and mortgage in controversy were given, connived, conspired, and confederated together to represent, and did in fact represent to the defendant that the molds so patented were the only molds and contrivances in existence for the molding of cement posts, except a hand mold that would mold but one post at a time, and that the one patented was far superior to the single hand mold, which was in use at that time.

And they further represented that by the use of said post molds any number of cement posts could be molded at one time, and that defendant, by purchasing the patent for certain territory, would have the only molds that were practicable for the molding of cement posts; that said invention of molds was new and novel and of great value; and that a party by the name of W. M. Ferguson, who was well known to defendant as a shrewd business man of good judgment, was organizing a company in Kansas City for the purpose of buying said patent right for the United States and had offered the said F. M. White the sum of $35,000 or $40,000 for said patent, and if defendant did not purchase certain territory, which they were then endeavoring to sell her, that the entire United States would be purchased by the said Ferguson Company, and defendant thereafter would have no opportunity to purchase said patent right for any portion of the United States, and all the representations aforesaid were false and untrue, and known to be false and untrue by the said F. M. White and J. E. Thorpe, and were so made by the said F. M. White and J. E. Thorpe to said defendant for the purpose of deceiving and defrauding her, and that she, believing said representations to be true, and relying thereon, was induced thereby to purchase the patent right aforesaid, and execute the note and mortgage in question.

Further answering she says that said F. M. White and J. E. Thorpe, conspiring and confederating together for the purpose

of defrauding the defendant, represented to her that farmers in great numbers in the vicinity of Newkirk and Kaw City, in Kay county, Okla., had purchased the aforesaid right to make posts to inclose their farms, and induced said defendant to send her brother, Washington Brown, with the said J. E. Thorpe into the country and vicinity of Newkirk, Kay county, Okla., to sell the farmers the right to manufacture said posts, and that the said F. M. White and J. E. Thorpe, for the purpose of deceiving defendant, had previously thereto procured certain parties to pretend to purchase said right to manufacture posts and to pretend to buy the same, when approached by the said J. E. Thorpe and the said Washington Brown; and upon said trip the said J. E. Thorpe secured orders for the sale of the said patent right from divers farmers to the amount of $45, but that none of said sales were *bona fide,* and that the said J. E. Thorpe and F. M. White had procured said parties to buy said right in order that they might deceive defendant, and thereby induce her to execute said note and mortgage, and induce the brother of the defendant to represent to defendant that said purchases were so made in good faith, and *bona fide* in their nature, when in truth and in fact said pretended purchases by said farmers were false and untrue, and said arrangements were made for the sole purpose of defrauding defendant.

To this answer of the defendant, the plaintiffs interposed a motion for judgment on the pleadings; also a motion to strike out certain allegations in the said answer; also a demurrer to certain parts of the defendant's amended answer; also an objection to the introduction of testimony under said amended answer, as well as a motion for judgment on the pleadings, and statement of defendant's case to the jury; each and every one of which were overruled by the court, and exceptions saved by the plaintiffs.

Plaintiffs replied and alleged in substance that the said White had patented the said mold for making cement posts as alleged in defendant's answer, but denied the note set out and described in said defendant's answer was given wholly for one-half interest in certain territory for said patent right, but admitted that $2,250

of said consideration was given for the right to use and sell the said patent right in certain territory, and that the balance of said consideration of $4,000 was given to take up a note of $1,750 by the said defendant to the said J. E. Thorpe; that as a part consideration of the defendant to execute to the said J. E. Thorpe her note of $4,000, and securing the same by a mortgage, properly executed upon real estate set out in defendant's amended answer, the said J. E. Thorpe surrendered to the said defendant the note held against her for $1,750 and released the mortgage securing the same.

Upon the issues thus joined trial was had, and the case was submitted to a jury, and on February 3d a verdict was rendered in favor of the defendant and for her costs; on the same day plaintiffs filed their motion for a new trial, which motion was by the court overruled and exceptions saved, and thereafter judgment was rendered on the verdict in favor of the defendant and against the plaintiffs. From this judgment plaintiffs appeal, and assign many errors upon which they seek a reversal of the judgment.

The first one to be noticed is the sufficiency of defendant's amended answer, whether or not the allegations thereof are broad enough to constitute any defense to the plaintiff's cause of action, and also whether these, taken together with the statement of her case to the jury by her counsel, state any defense to the petition. The answer was challenged by plaintiff in the following manner: First, by demurrer; second, by motion to strike out; third, by motion for judgment on the pleadings, and the statement of her case to the jury; fourth, by the objection to the introduction of testimony under the said amended answer.

As will be seen the objections challenge the sufficiency of defendant's amended answer, all raising the same question, and we will consider them together. The part of the amended answer which plaintiffs in error contend does not state any defense, is found in the third paragraph of second defense, and relates to representations, statements, and matters of opinion of Thorpe and White, and, as arranged by counsel for plaintiffs in error,

may .be stated as follows: First, "matter of opinion"; second, "dealers' talk"; third, "representation as to value"; fourth, "statements of price which he has given or been offered for it."

Counsel for plaintiffs in error contend, and want this court to uphold them in this contention, that the allegations of the defendant's amended answer, all of which for the purpose of the demurrer and other motions are taken as true, are simply expressions of opinion, dealers' talk, representations as to value, etc., which, even though they be false and were known to be false by Thorpe and White when made, and were made for the sole and express purpose of selling the patent right, and made to deceive, and did deceive, the defendant, yet, should be assumed, by the court to be made always by persons holding property for sale, and that any purchaser who confides in such statements should be considered by the court too careless of his own interests to be entitled to any relief, and that therefore said amended answer is insufficient in law, and that the court below erred in refusing plaintiffs in error the relief sought by the demurrer, etc. Such doctrine may be the law in some states, and possibly obtains to some degree in this state, but the trend of modern decisions is that where a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which plaintiff relied, and was thereby deceived, it is no defense to an action for rescission or for damages arising out 'of deceit, or to avoid a contract, that the party to whom the representations were made might with diligence have discovered their falsity, and that he made no searching inquiry into facts.

In 20 Cyc. 53, it is said:

"General assertions or expressions of a vendor in commendation of his land or wares—commonly called 'dealers' talk'— are generally held to fall within the rule under discussion, and thus to constitute no grounds for an action of deceit. Statements merely descriptive of the operation and utility of an invention or patented article are generally regarded as mere expressions of opinion, or 'dealers' talk,' upon which a purchaser cannot safely rely; and even a misrepresentation that experiments have been made with the invention and have proved successful has been held

to be merely an expression of opinion and so not actionable, although put in the form of a statement of a past fact."

But, as is suggested by counsel for the defendant, the balance of that text reads as follows:

"But the decisions in cases of this character are not wholly consistent, and representations very similar to those just indicated have been held to be sufficient to ground an action for deceit as false statements of fact."

And in *Merrillat v. Plummer*, 111 Iowa, 643, 82 N. W. 1020, it was said:

"Where defendants, sued on a note given by them for the right to use a fence building machine, as to the merits of which they knew nothing, pleaded fraudulent and false representations in the procurement of the note, and want of consideration, the rejections of evidence to prove plaintiff's inducing statement as to the machine's capacity, and the amount of fence that could be built with it, based on plaintiff's own observation and knowledge, was error, since such statements were representations of fact, and not mere expressions of opinion. It was error to reject defendant's evidence as to the value of the machine and the work it was capalbe of doing, since such evidence was competent and material to show that it could not do the work plaintiff had stated it had and could still do."

In *Pierce v. Wilson*, 34 Ala. 596, it is said:

"But a gross misrepresentation of the capacity of a machine and the success in selling and operating it, of which the purchaser was ignorant, has been held sufficient to warrant the rescission of the contract induced thereby."

On page 32 of 20 Cyc., we find the following:

"It is difficult to draw a line beyond which human credulity cannot go, especially in speculations in mining stocks. If the representations were so extravagant that sensible, cautious people would not have believed them, that is a proper consideration for the jury in determining whether the plaintiff believed and relied upon them; but it does not preclude a finding that the plaintiff did so, or relieve the defendant from liability for his fraud, if he committed fraud. It is as much an actionable fraud wilfully to deceive a credulous person with an improbable falsehood as it is to deecive a cautious and sagacious person with a plausible one. The law draws no line between the two falsehoods. It only asks in either case, Was the lie spoken with intent to

deceive and defraud, and was the false statement believed, and money paid on this faith that it was true? These questions are for the jury."

The statement as made by Thorpe and White that Ferguson, a man well known to the defendant and in whose business ability she had great confidence, was in Kansas City at that time organizing a corporation for the purchase of all the territory in the United States for $35,000 or $40,000, was certainly a statement of a material existent fact, and not an expression of an opinion or representation as to value.

"Statements by a vendor that a third person has offered him a certain sum for the property, is a statement of a material fact affecting the value and may form the basis for an action of deceit." (20 Cyc. 59.)

"In cases where positive fraudulent misrepresentations have been made by the vendor, the modern cases show a strong tendency either to relax the doctrine of *caveat emptor,* or to refuse to extend it further than it has been carried by previous decisions, even with respect to 'dealers' talk'; the courts taking the view that a vendor, guilty of a falsehood made with intent to deceive, should not be heard to say that the purchaser ought not to have believed him." (20 Cyc. 62, and the long line of authorities there cited.)

"A contract obtained by the fraudulent representations or conduct of one of the parties thereto cannot be enforced if it satisfactorily appears that the party seeking a rescission has been misled in regard to a material matter by such representation or conduct to his injury." (*Coolidge v. Goodard,* 77 Me. 574, 1 Atl. 831; *Schneider v. Foote* [C. C.] 27 Fed. 581; *Seeley v. Reed,* [C. C.] 25 Fed. 361; *Mills v. Collins,* 67 Iowa, 164, 25 N. W. 109.)

"Where a person positively makes false representations as an inducement for another to contract with him, and such person, relying wholly upon such false representations, enters into a written contract, the contract is voidable for fraud, although the false representations were innocently made." (28 Kan. 517, *Wickham v. Grant.*)

In the case of the *City of Tacoma v. Tacoma Light & Water Company,* 17 Wash. 458, 50 Pac. 56, it is said:

"Where a purchaser has no knowledge that statements of fact of the vendor are false, he may rely on them implicitly if

they are not so openly and palpably false that their untruth is apparent to an ordinarily prudent person. In an action for damages for deceit and fraudulent misrepresentation in the sale of water and light plants by defendant, a private corporation, to plaintiff, a municipal corporation, it appeared that defendant owned waterworks, electric light and gas plants, sources of water supply, mains, and other property; that defendant represented in specific figures the daily flow from certain water sources, the number of feet of new conduit sound and in good condition, the number of feet of iron mains, and the annual net income from the business. *Held,* that these were representations of facts on which plaintiff could rely, though it had made a partial examination of the property before the sale. Where the material facts of a case are supported by competent evidence, though it may be very conflicting, and the preponderance may appear to be the other way, a court for the review of errors on appeal cannot disturb the verdict."

In Bigelow on Frauds, p. 524, is found the following:

"If the representations were of a character to induce action, and did induce it, that is enough. It matters not, it has well been declared, that a person misled may be said, in some loose sense, to have been negligent (in reality negligence is beside the case where the misrepresentation was calculated to mislead, and did mislead); for it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or 'You were yourself guilty of negligence.' This indeed appears to be true even of cases in which the injured party had in fact made a partial examination."

And in *Strand v. Griffith,* 97 Fed. 854, 38 C. C. A. 444, it is said:

"The rule of *caveat emptor* is not founded on a high standard of morals, but it is no longer a shield and protection to the deliberate frauds and cheats of sharpers."

These authorities amply sustain the rule contended for by defendant in error, that where a party was induced to make and enter into a contract by the false and fraudulent representations of material existent facts, which were made for the purpose of deceiving the party, the contract may be avoided, and this doctrine has also been enunciated by decisions of our own Supreme Court, especially in the case of *Gilpin v. Nettograph Machine Co.*

*et al.,* 25 Okla. 408, 108 Pac. 382, 29 L. R. A. (N. S.) 477, where Mr. Justice Turner, speaking for the court, said:

"Where, in a suit on two promissory notes the testimony disclosed that the same were executed in renewal of two other notes given by defendant to plaintiff in payment for his share of the purchase price of a worthless patent right, that defendant was induced to sign the original notes by the agent of plaintiff, and L., one of defendant's copartners, by representing to him that L., on whose honesty, good faith and judgment defendant relied, thought it a good investment and would join his copartners in the purchase thereof, and pay for and share therein equally with them; that after the deal was closed pursuant to a secret agreement between said agent and L., plaintiff returned to L., unpaid his note and check given in payment for his share of the purchase price of said patent right, *held,* that the evidence was sufficient to take the case to the jury on the ground of fraud; *held,* also, that the execution of the renewal notes before the discovery by defendant of the fraud did not constitute a waiver thereof."

The foregoing case is also valuable as showing the length of time that may elapse before the defrauded party acts in disavowing his contract. In that case the original notes had been merged, by renewal, into others, and the maker had made no effort to avoid same until suit had been brought. In the case at bar, while defendant waited a long time before she disavowed her contract, yet it does not appear that any one was injured, or that their status had been changed by reason of her failure to act, nor was the length of time between the date of the discovery of fraud and the bringing of the suit, under the facts and circumstances of this case, an unreasonable or inexcusable delay.

Bigelow on Frauds, vol. 1, p. 523, lays down the rule as follows:

"Recent authority has, however, gone far towards settling the matter right in principle. The proposition has now become widely accepted, at law as well as in equity, at least as general doctrine, that a man may act upon a positive representation of fact, notwithstanding the fact that the means of knowledge was specially open to him, although he had legal notice of the real state of things. It may be improbable that a man with the truth

in reach should accept a representation made in regard to it, but the improbability can be no more than a matter of fact."

In *Fargo Gas & Coke Company v. Fargo Gas & Electric Company,* 4. N. D. 219, 59 N. W. 1066, 37 L. R. A. 593, a well-considered case involving a discussion of this identical question, the court in closing said:

"The unmistakable drift is toward the just doctrine that the wrongdoer cannot shield himself from liability by asking the law to condemn the credulity of his victim. The general rule is, and upon principle must be, that the question is one of reliance by the buyer upon the false statement of the seller. Whether it was wise for him to rely upon it, whether he was prudent in so doing, whether he is not chargeable with negligence in a certain sense in not investigating these inquiries, are in general immaterial, provided the purchaser has in fact been deceived. The circumstances under which fraud is accomplished are so varied, the nature of the property and the character of the misrepresentations so widely different, in different cases, that it is unwise to attempt to enunciate with precision a general rule by which all cases shall be governed."

In the amended answer it is charged that Thorpe and White told defendant that the invention was new and novel; that it was the only mold in existence that would mold in a satisfactory manner more than one post at a time; that there was a great demand for such a machine; that Ferguson, a shrewd and successful business man, had investigated the proposition and was then organizing a corporation to purchase for $35,000 or $40,000 all the territory in the United States, and that unless she purchased at once the opportunity would pass, and she could not get the territory at all. All these things she alleges in her amended answer. She also alleges that she relied upon them as being true; that they were in fact false as she afterwards ascertained; that by reason of the said false representations she was induced to, and did execute the note and mortgage sued on.

After all the only question raised by the demurrer and other motions in attacking the sufficiency of the amended answer is, Does the answer show that Miss Brown was deceived, and were the false representations made to her by Thorpe and White the

cause of the deception? It does not matter that she acted unwisely or imprudently, or whether she was negligent in not investigating; the real question still remains, Was she deceived by the representations of Thorpe and White, made by them falsely and with intent to deceive and defraud? If she was, then the answer is sufficient. The amended answer, in our opinion, states a good defense in fraud and deceit, and the relief sought by the plaintiffs in error in the court below by the demurrer and other objections to the same was properly denied by the trial court.

As to the other questions raised by the first assignment and discussed in the brief of plaintiffs in error—i. e., that defendant by her silence for more than a year after the note was made waived any rights she may have had to avoid the contract, and that the offer to return whatever of value she may have received, to the proper person, as pleaded in her amended answer, was not such a tender as the law requires—they should be resolved in defendant's favor, under the facts set up in the said amended answer. Section 1137, Comp. Laws 1909, provides that to enable one to rescind and avoid his contract it is necessary to restore to the other party everything of value on condition that such party shall do likewise, unless the latter is unable or positively refuses to do so. In 24 Am. & Eng. Ency. Law (2d Ed.) 621, is found the following:

Whether the complaint in a suit for rescission must, as a condition precedent to relief, have offered or tendered restitution to defendant prior to the bringing of the suit, is a matter upon which the authorities are conflicting. The rule of the better considered cases is that it is sufficient that the plaintiff makes an offer to restore or to do equity in his bill or complaint, and also therein that he has substantially preserved the *status quo* on his part so to be able to fulfill his offer."

This rule was quoted with approval by our own Supreme Court in *Clark et al. v. O'Toole et al.,* 20 Okla. 319, 94 Pac. 547.

In *Thayer v. Knote,* 59 Kan. 181, 52 Pac. 433, it is said:

"As a general rule, where equity requires the restoration of what has been received under a contract as a condition to its rescission, it is sufficient to make the offer of restoration, in the petition, and not necessarily before the bringing of the suit."

Taking into consideration all the facts and circumstances of the instant case, we cannot say as a matter of law that defendant, in waiting until suit was brought on the note before attacking the contract on account of fraud and deceit, was guilty of such negligence and laches as to deny her the right to make her defense. It would, without doubt, have been better had she acted more promptly in disavowing the contract than she did. Yet her failure to do so was not fatal. The material fact remains that she was defrauded, that the note she signed was nonnegotiable, and was held by citizens of a foreign state, and to have brought suit to avoid or cancel the same would have entailed an additional burden which she may not have been able to sustain. The note was given for one year, and it might well be said that the record shows simple justification and excuse on her part in waiting for suit to be commenced, as she knew must be done before any one could realize on said note. We must hold that she made a sufficient tender, and that her attack on the contract was made in sufficient time.

As to the second proposition relied on by plaintiffs in error, that the court erred in overruling their demurrer to defendant's testimony, after she had rested, and in not directing a verdict in their favor, for the reason set up in their brief, we feel that, inasmuch as this assignment involves to a very great extent the identical points discussed above, more than a passing notice need not be given to it. We have already held that the allegations of the amended answer for fraud and deceit were sufficient. Under these allegations proof was submitted which, to our minds, was sufficient to take the case to the jury. Hence the court was justified in overruling the demurrer and refusing to direct a verdict on that ground. As to the next point, that defendant failed to act promptly upon her discovering that she had been deceived, we have already disposed of it, and no error was committed in refusing to sustain plaintiffs' contention.

As to the third point, that the consideration of the note was money advanced by Thorpe for her and at her request, the jury, after hearing the story of Thorpe and White on the witness

stand, and under proper instructions from the court, refused to believe them, as against defendant's witnesses, and we think rightfully, too. We have no disposition to interfere with the findings of the jury on this phase of the case. The court did right in overruling the demurrer.

It is next contended that the court erred in refusing to direct a verdict for plaintiffs after both parties had rested, under the rule announced in *Solts v. S. W. Cotton Oil Co.*, 28 Okla. 706, 115 Pac. 776. We think the court was unquestionably justified in refusing to take this case from the jury by peremptory instructions directing a verdict. The evidence was conflicting, it is true, and may not have been as strong and satisfactory as plaintiffs thought necessary, but under the pleadings and the nature of the case, we do not see how the court could have done otherwise than it did. Defendant was entitled, under all considerations of the subject, to have the controverted questions of fact decided by the jury. This the court permitted. The plaintiff cannot complain.

As to the remaining alleged errors, they relate to the ruling of the court in admitting and rejecting evidence. None of these assignments are supported by authorities, and we are not inclined to agree with the argument of counsel or the reasons assigned in support of them. Had the theory of plaintiffs been sufficiently plausible and reasonable to have cast the balance the other way than that which it did fall, these observations on these minor questions might or might not have been approved without injury. As it is, we feel that the case was fairly submitted to the court by pleadings sufficiently definite to present and protect all the rights of the parties; that the instructions were comprehensive, and fairly and impartially state the law applicable to the issues joined, and as a whole are unobjectionable; that the facts presented to the jury under the rulings of the court presented controverted questions, and that the general verdict of the jury settled all the issues raised in defendant's favor, and that no error of sufficient importance to warrant a reversal appears in the record, and that by the judgment substantial justice has been done.

Therefore the judgment of the district court of Kay county should be affirmed.

By the Court:   It is so ordered.

All the Justices concur.