Clarence E. DOERR and Betty J. Doerr, Appellees,

v.

Joe V. HENRY and Grace Henry, Appellants.

No. 70970.

Court of Appeals of Oklahoma, Division No. 4.

June 12, 1990.

Supplemental Opinion on Denial of Rehearing Oct. 2, 1990.

As Amended Nov. 29, 1990.

Certiorari Denied Feb. 12, 1991.

Bob Rabon, Kile, Rabon and Wolf, Hugo, for appellees.

Joe Stamper, Stamper, Otis & Burrage, Antlers, for appellants.

BRIGHTMIRE, Chief Judge.

This is a real estate mortgage foreclosure action in which the defending mortgagors filed a counterclaim for cancellation of the mortgage, rescission of the real estate sales contract, and damages for breach of contract and fraud.

The trial court granted the plaintiffs a decree of foreclosure and denied the defendants relief on their counterclaim.

We reverse and remand.

I

The operative facts are somewhat involved and center on the plaintiff sellers' misrepresentation of the quantum of land they owned and sold, on which the defendant purchasers relied in buying the property.

The plaintiffs, Betty and Clarence Doerr, owned some land fronting on Lake Raymond Gary in Choctaw County, Oklahoma, which was part of the Pauline Bailey Survey and Plat filed September 5, 1957. On the Bailey plat the property the Doerrs actually owned is identified as Lots 31, 32 and 33, and part of Lot 30. In 1979 Mr. Doerr hired a registered surveyor named Lambert to prepare plats reflecting the results of his survey. According to Lambert, Mr. Doerr told him where to put the stakes and the survey was made between the designated points within the NW/4 of Section 36, Township 6 South, Range 19 East of the I.B.M. in Choctaw County. The sur-

veyor prepared two survey plats which were referred to as Plat 1 and Plat 2. Each plat extends the boundaries of the Doerrs' property far beyond the lots shown on the Bailey plat.[1]

Prior to 1984, the defendants, Joe and Grace Henry, were living in Fort Worth, Texas, where Mr. Henry operated a mail order business along with an additional regular job. He retired from his job and along with his wife wanted to move from Fort Worth. The Henrys heard about the Doerrs' place on Lake Raymond Gary being for sale so they visited Hugo, Oklahoma, for the purpose of looking at it.

The Doerrs gave the Henrys copies of the two survey plats prepared by surveyor Lambert and took the Henrys over the property shown on the plats.

Based on the Doerrs' representation as to the boundaries of their land, as shown in the survey plats, the Henrys agreed to buy the two plots of land for $85,000.

On June 30, 1984, the Henrys paid $8,500 and the parties executed a sales agreement to which was attached the two Lambert plats of the land being sold. The agreement reads as follows:

"C.E. and Betty J. Doerr agree to sell to Joe V. and Grace Henry two (2) plots of land on Lake Raymond Gary (as shown on attached surveys) for the sum of $85,000.00 payable as follows:

$8,500.00 binder on June 30, 1984

$31,500.00 on or before October 19, 1984

$45,000.00 (final payment) on or before January 31, 1985.

Seller agrees to furnish survey stakes at all corners of both plots.

Seller agrees to install chimney cap on chimney, repair or replace downstairs bedroom door, switch plate on upstairs hallway light switch.

Seller agrees to furnish abstract and marketable title on plot 1 where buildings are located, a warranty deed will be furnished on plot 2.

The refrigerator, washer, dryer, freezer, sattlite [*sic*] receiver, drapes, light fixtures are included in sale."

The Doerrs' lawyer, Vester Songer, wrote the Henrys a letter dated September 14, 1984, concerning the two tracts in question. In it he referred to Tract 1 as Lot 33 but gave the legal description of Lambert Plat 1. He also referred to Tract 2 for the first time as Lots 31 and 32 in the Pauline Bailey Survey. He advised that the Doerrs had "abstracts of title to Tract One ... and I am having the abstracter extend [it] to make it current," and added, "[a]s you know, there are no abstracts to Tract Two," and to have one made would cost about $450. Mr. Songer said it was his "understanding that you [the Henrys] have familiarized yourself with the boundary of the property and are satisfied with the same. Lot 33 has a good title. I cannot express an opinion as to Tract Two for the reason that there are no abstracts available." Finally the lawyer said the Henrys would get a "warranty deed" as to Tract 1 and "a Warranty Deed or a Limited Warranty Deed to Tract Two." The abstract to Tract 1, incidentally, had been updated or extended to only November 1, 1979.

The closing took place at Mr. Songer's office on October 19, 1984. The Henrys paid $31,500 more at which time the Doerrs executed two warranty deeds. One conveyed to the Henrys and warranted title to land called "Lot 33 in the Pauline Bailey Survey" but described by metes and bounds as Lambert Plat 1. The other deed conveyed and warranted title to "Lots 31 and 32 in the Pauline Bailey Survey to Lake Raymond Gary." These lots were given no metes and bounds description. Following this the Henrys executed a mortgage to secure the $45,000 note given for the balance of the purchase price. The description in the mortgage coincided with those in the two deeds.

The lawyer did not tell the Henrys they were getting less land than they had contracted for. Nor did the lawyer ask the

---

**1.** To aid in understanding the land sold in relation to the land owned we attach a drawing as Appendix "A."

Henrys if they knew that Lots 31 and 32 were not the same property as shown on the Lambert Plat 2 attached to the contract. Moreover, he was silent upon hearing Mr. Doerr say, in response to a question by Mrs. Henry about what Lots 31 and 32 were, "[i]t is the same thing as Plat 2" and that he could give a better deed by calling it Lots 31 and 32.

After closing the sale, depositing checks and filing mortgages and deeds, Mr. Doerr and Mr. Henry met at the lot sites so Doerr could show Henry where the corner stakes were. It turned out, however, that Mr. Doerr could not find any stakes!

Mr. Henry then "had serious reservations." He took the one abstract he had for Tract 1 to attorney John C. Muntz who examined it and on January 22, 1985, wrote an opinion rejecting the title. Among other things, lawyer Muntz reported a possible claim of ownership by Victor Roebuck and his wife of all the property sold by the Doerrs which is not platted as Lot 33 in the Pauline Bailey survey and required a quit claim deed on such property from the Roebucks as well as the Doerrs. Upon receiving this opinion, Mr. Henry wrote the Doerrs January 23, 1985, advising of the lawyer's opinion and the need to obtain quit claim deeds to the property sold but not yet conveyed; that the Henrys also wanted subject property staked in accordance with Plats 1 and 2 and a warranty deed to Plat 2 as required by the contract of sale; and that if these matters were not taken care of by January 31, 1985—the date when final payment was due—the Henrys would delay payment until such time as they were accomplished.

The required matters were not accomplished, so the January 31, 1985, payment was not made by the Henrys.

Seller Doerr admitted in a deposition that he based the sales contract on Plats 1 and 2; that he knew of Roebuck's claim prior to making the contract with the Henrys; and that he felt obligated to furnish the Henrys with the acreage contracted for.

The Doerrs, on November 26, 1985, filed this lawsuit against the Henrys asking the court to grant them judgment for the un-paid $45,000 balance due under the contract and to foreclose their mortgage.

The Henrys answered pleading partial failure of consideration in that subject mortgage covered lands which were not owned by the plaintiff Doerrs and alleging that the Doerrs knowingly misrepresented the boundaries of the lots that were, both orally and graphically, with the intent to induce the Henrys to purchase said lands and that based thereon the defendants, to their detriment, agreed to purchase said lands. They also filed a counterclaim asking the court to cancel the note and mortgage, order the return of the $40,000 already paid to the Doerrs, and award them compensatory damages in the amount of $68,649.70 and punitive damages in the amount of $50,000 for the actual fraud perpetrated by the Doerrs on the Henrys by either knowingly or recklessly representing that they owned land they did not own to induce the Henrys to act on the misrepresentations and buy the property. The Henrys further pleaded that they relied on such misrepresentations and altered their position by signing a sales agreement and paying the Doerrs some $40,000.

The trial court denied the Henrys a jury trial on their fraud claim. A bench trial was held July 15, 1987. In addition to the evidence mentioned above, the defendants adduced evidence in support of their claim for compensatory damages in the amount of $68,649.70. It was not until April 13, 1988, that the trial judge rendered a decision granting the plaintiffs all the relief they requested and denying the defendants any relief on their counterclaim.

The Henrys appeal seeking reversal of the Doerrs' foreclosure judgment and of the judgment denying the Henrys the relief sought in their counterclaim including damages resulting from the alleged deceit practiced by the Doerrs.

## II

The Henrys contend that some of the trial court's material findings of fact are clearly against the weight of the evidence

and some of its legal conclusions reversibly erroneous. We agree.

The trial court rejected the defendants' plea for rescission and damages based on fraud because of the difficulties involved in trying to locate the Pauline Bailey Survey lines and the fact that surveyor Lambert made a misstatement of the directional bearing on one boundary line of the platted drawings—a misdescription that was inconsistent with the drawings and which was later caught and corrected to coincide with the drawings. The undisputed evidence is, however, that the Doerrs made a positive material assertion about the boundaries of the land they were selling for which they had no reasonable basis. Furthermore they failed to disclose the fact that they did not know where their lot lines were.

■ Although the trial court expressed concern about the Henrys' failure to hire a lawyer to help them before signing the sales contract, the fact remains that they were not legally required to do so but had a right to rely on the representations of the sellers as to the ownership, location, and boundaries of the property the Doerrs offered to sell. *Miller v. Wissert*, 38 Okl. 808, 134 P. 62 (1913). And having made a disclosure about the boundaries, the Doerrs had a duty not to conceal any material fact concerning their knowledge of the location of their property. Such concealment in the face of a duty to speak could be actual as well as constructive fraud. *Faulkenberry v. Kansas City Southern Ry.*, 602 P.2d 203 (Okl.1979), cert. denied, 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983). As the court said in *Faulkenberry*, "the very same legal consequence" flows from constructive fraud as from actual fraud. *Id.* at 206.

■ The two plats attached to the sales contract, when compared to the Pauline Bailey Survey, reveal that the Doerrs were representing that they owned and were selling considerably more land than they actually owned.[2]

It is undisputed that Mr. Doerr picked the location for the stakes set by surveyor Lambert which were used to create Plats 1 and 2. Thus Mr. Doerr graphically represented to the Henrys the location and extent of the property he owned and was selling to the Henrys. Even assuming that Mr. Doerr inadvertently erred in setting the stakes, it still is no defense, as the trial court suggests, that the exact stake points of the Bailey plat were difficult to locate and that Mr. Doerr made an innocent mistake in locating them, because if true then Mr. Doerr, upon undertaking to describe the land boundaries to the Henrys, had a duty to make a full disclosure and tell them he was not sure where the lot lines were and that the Henrys would have to determine that for themselves. Under these circumstances, the conclusion set out by the trial court in its Journal Entry of Judgment—that "there is no showing that there was any intent on Mr. Doerr's part to defraud the parties if he made a false allegation as to the description of the property and the staking of the corners"—was not justified.

At this point we review the essential elements of fraud. Actual fraud is defined in 15 O.S.1981 § 58 thus:

"Actual fraud, within the meaning of this chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, *or to induce him to enter into the contract:*[3]

1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true.

2. The positive assertion in a manner not warranted by the information of the

**2.** For clarification we include the following: Appendix "A" is a relevant portion of the Pauline Bailey Survey showing the locations, shapes and sizes of Lots 31, 32 and 33, and the comparative shapes and sizes of Tracts 1 and 2 attached to the sales contract; Appendix "B" shows the land described in Plats 1 and 2 attached to the sales

contract which the Doerrs represented they owned and were selling to the Henrys; and Appendix "C" is a smaller scale orientational plat of the Pauline Bailey Survey.

**3.** Emphasis added. Footnote omitted.

person making it, of that which is not true, though he believe it to be true.

3. The suppression of that which is true, by one having knowledge or belief of the fact.

4. A promise made without any intention of performing it; or,

5. Any other act fitted to deceive."

Constructive fraud is defined in 15 O.S. 1981 § 59 this way:

"Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

Hence, even without an intent to deceive, a party can be guilty of either actual fraud or constructive fraud under the foregoing statutory law if he induces another to enter into a contract by a misleading positive material assertion not warranted by his information, *Faulkenberry v. Kansas City Southern Ry.*, 602 P.2d 203 (Okl.1979); *Kelly v. Robertson*, 61 Okl. 85, 160 P. 46 (1916), or where he is shown to have no reasonable grounds for believing it to be true, even though believed by the party making it, *Garvin v. Harrell*, 27 Okl. 373, 113 P. 186 (1911), and even if the utterer may not know the representation is false, *Leasure v. Hughes*, 72 Okl. 75, 178 P. 696 (1919). For the affirmation of what one does not know is, in morals and law, as unjust and wrongful as the affirmation of that known to be positively false. *Howe v. Martin*, 23 Okl. 561, 102 P. 128 (1909).

Under the facts of this case and the foregoing authority we hold that the trial court's rejection of the defendants' plea for cancellation of the sales contract and deeds, and for consequent damages, was clearly against the weight of the evidence

and inequitable. There is no question about the misrepresentation of subject lot boundaries and if one concludes, as did the trial court, that the Doerrs did not realize they were misrepresenting or suppressing crucial facts, their conduct nevertheless falls within the purview of constructive fraud.[4] 15 O.S.1981 § 59; *Faulkenberry*, 602 P.2d at 203. And having undertaken to give relief, equity may give complete relief whether legal or equitable in nature including the awarding of consequential damages, costs and an attorney fee necessary to adjust all rights and claims of the parties emanating from the transaction and for restoration to the status quo. *Commercial Communications, Inc. v. State*, 613 P.2d 473 (Okl.1980).

Considerable emphasis was placed by the trial court on what it considered to be plenty of time for the Henrys to investigate the boundary lines and uncover the misrepresentations before they signed the mortgage. A prospective buyer, however, has a right to rely on the veracity of the seller and his agent without investigation. The risk of harm in this state lies with the wrongdoer rather than his victim. *Prescott v. Brown*, 30 Okl. 428, 120 P. 991 (1911); *Beavers v. Lamplighters Realty, Inc.*, 556 P.2d 1328 (Okl.App.1976). The court in *Miller v. Wissert*, 38 Okl. 808, 811, 134 P. 62, 64 (1913), dealt with a similar legal controversy and laid down the following no-nonsense principle:

"False representations of a vendor as to the quantity of a tract of land he offers for sale are not mere matters of opinion, but are material, and he cannot avoid their consequences merely because the vendee might have ascertained their falsity by a survey of the land or by reference to official plats and records."

The trial judge also invoked what he accepted as an applicable metaphoric analogy, "that one can buy a 'pig in a poke'," and if you do and "you don't look in the bag, you get the pig that is there and that's

---

4. The author believes the clear weight does require a finding of actual fraud. His colleagues, however, are of the opinion it does not, but that the evidence does require a finding that con-

structive fraud induced the sales agreement and that the defendants are entitled to complete equitable relief.

all. Nothing additional. Neither does it give you an action in fraud if you decide later that you don't like the pig." Of course, the trial judge may be correct about southern lore, but he errs in applying the frontier allegory as the law of this state. It is another way of describing the long-since discredited common-law doctrine of *"caveat emptor"* which our high tribunal rejected as early as 1911 in *Prescott.*

And speaking of pigs, the supreme court of this state that same year handed down *Hobbs v. Smith,* 27 Okl. 830, 115 P. 347 (1911), in which it upheld a judgment on a verdict awarding the buyers of some hogs in a poke, as it were, both compensatory and punitive damages for the fraud and deceit practiced by the seller who had represented that the swine were "in sound health and condition" and that he wanted to sell and deliver them to the plaintiffs at their stockyards in Dover, Oklahoma. Without looking in the "poke," the plaintiffs bought 40 porkers sight unseen in reliance upon the representation of the defendant. Thereafter, the plaintiffs received and paid for 27 of the hogs. Not long after that the plaintiffs noticed the animals appeared to be sick. The plaintiffs had them checked and were informed that the defendant's hogs had cholera. The evidence disclosed that many of them had died of cholera a few days before delivery, and that the defendant knew his hogs were diseased when he sold them to the plaintiffs. The plaintiffs were permitted to recover not only for the loss of the hogs they bought but for some of the plaintiffs' healthy hogs that became infected and died, and for incidental damages arising from infecting other hogs of the plaintiffs, including their care, disposition of dead animals, and renovation of the plaintiffs' premises. The defense, incidentally, was that (1) the hogs were not sick at delivery; and (2) the plaintiffs were experienced dealers in hogs and were able to examine and ascertain whether they were diseased or not before accepting them.

We hold that the clear weight of the evidence is that the defendants were victims of constructive fraud as a result of substantial misrepresentations made by the plaintiffs about the extent of the land they owned and were selling, that the defendants relied on such misrepresentations to their detriment and consequently they are entitled to equitable relief.

### III

The judgment appealed is therefore reversed and the following judgment is rendered for the defendants: (1) The sales contract, the note, the mortgage, and the deeds are cancelled; (2) The plaintiffs' petition for relief is denied; (3) The defendants are awarded judgment against the plaintiffs on their counterclaim for $63,649.70 with interest; (4) The defendants are granted a reasonable time to relocate and to vacate subject premises; and (5) The defendants are awarded the costs of this action which shall include a reasonable attorney fee the defendants have incurred to date, including work on this appeal, which shall be determined by the trial court on remand.

REIF and STUBBLEFIELD, JJ., concur.

## APPENDIX A

# APPENDIX B

Plat I - Draw Hwy
6/30/84

Shore Line Lake Raymond Gary

Scale : 1" = 100'

<u>LEGAL DESCRIPTION</u>

A piece or parcel of land lying in the NW¼ of the NW¼ of the NE¼ of Section 36, Township 6 South, Range 19 East of the I.B.M., Choctaw County, Oklahoma, and more particularly described by metes and bounds as follows, to-wit: BEGINNING at the NW corner of the NW¼ of the NW¼ of the NE¼ of said Section, thence S 89° 52' E a distance of 165 feet, thence S 88° 30' W a distance of 257.4 feet, thence S 25° 40' W a distance of 276 feet to the shoreline of Lake Raymond Gary, thence northwesterly along the said shoreline a distance of 25 feet, thence North a distance of 494 feet to the place of BEGINNING, containing 1.46 acres, more or less.

<u>CERTIFICATE</u>

The above plat shows all improvements and encroachments to the above described property, and iron pins or markings are at all property corners, and this is a true and correct plat thereof.

Registered Land Surveyor
Oklahoma License No. 1036
September 26, 1979

EXHIBIT "2"

PLAT 1

<u>LEGAL DESCRIPTION</u>

A piece or parcel of land lying in the NW¼ of the NW¼ of the NE¼ of Section 36, Township 6 South, Range 19 East of the I.B.M., Choctaw County, Oklahoma, and more particularly described by metes and bounds as follows, to-wit: BEGINNING 165 feet S 89° 52' E of the NW corner of the NW¼ of the NW¼ of the NE¼ of said Section, thence S 89° 58' E a distance of 217.61 feet, thence S 2° 21' W a distance of 454.40 feet, thence S 70° 35' W a distance of 291.6 feet, thence N 50° 48' W a distance of 71.5 feet, thence N 25° 40' E a distance of 276 feet, thence N 2° 39' E a distance of 257.4 feet to the place of BEGINNING, containing 2.86 acres, more or less.

<u>CERTIFICATE</u>

I, Hal Lambert, Registered Land Surveyor, hereby certify that I have surveyed and staked with iron pins at each corner, and that this is a true and correct plat thereof.

HAL LAMBERT
Registered Land Surveyor
Oklahoma License No. 1036
December 20, 1979

EXHIBIT "3"

Plat 2 Draw Hwy
6/30/84

Lake Raymond Gary

Scale : 1" = 100'

PLAT 2

APPENDIX C

## SUPPLEMENTAL OPINION ON REHEARING

BRIGHTMIRE, Chief Judge.

In their Petition for Rehearing the Doerrs state that this court's decision exceeded the acceptable standards of review by weighing the evidence and making findings that differ from those made by the trial court. More specifically, they say a "pivotal and controlling issue" which the trial court found in the Doerrs' favor was whether the fact that the Henrys were getting less land than they contracted for was revealed to them prior to closing. The Doerrs say the trial court found such fact in their favor and this court has found otherwise.

Without conceding that the issue referred to is pivotal or controlling, we think it would be helpful to examine the trial court's lengthy findings and conclusions in an effort to determine whether the suggested "pivotal" fact was found to be as the Doerrs maintain, or whether this court found any material fact contrary to what the trial court found.

On April 13, 1988, the trial court signed a nine-page document entitled "Journal Entry of Judgment" and filed it the next day. In it the court recited certain evidence it had heard on August 15, 1987, stated its view of the law, made certain findings, and entered a "decree of foreclosure" in favor of the plaintiffs and against the defendants.

Shorn of various irrelevant asides, the trial court's findings of fact are as follows:

(1) "[T]hat many things are unknown by any of the parties to this suit and cannot be determined with any certainty";

(2) The defendants should have hired a lawyer before contracting for the property;

(3) The testimony of surveyor Lambert is "undisputed" and his testimony was such with regard to the "Pauline Bailey Survey," that "the Court doubts that anyone can accurately determine who owns or possesses which property in that area," and therefore the court finds that "there

is no accurate description which can be given to ... Lot 31, Lot 32, or Lot 33";

(4) One bearing is in error on "Plat 1, as attached to the contract of the parties," an error that does not permit the description to close. Documents prepared after September 14, 1984, show the "proper bearing and a description which does describe a closed area";

(5) The "Court finds that there was no requirement of the contract which was not completed prior to or at the time of transfer of the property. The descriptions that were shown in that original contract are questionable or indeterminable";

(6) The contract called for "the seller to furnish survey stakes at all corners of both plots. This was attempted and the stakes were provided, at least at one time, as shown not only by the testimony of Mr. Doerr, but by the testimony of Mr. Lambert that he was the party hired as a professional surveyor to survey and stake the corners";

(7) "The abstract was furnished at closing and was available prior to that time by the testimony of Mr. Songer, as attorney. He also indicated a marketable title to 'Lot 33' on which the improvements were located";

(8) The "contract was executed completely at the closing on October 19, 1984";

(9) "The finding, as stated previously, also makes the possibility of the allegation of fraud very thin and the Court finds that one of the essential elements of fraud is that it must be with intent and there is no showing that there was any intent on Mr. Doerr's part to defraud the parties *if he made a false allegation* as to the description of the property and the staking of the corners and allowing the defendant to examine the property" (emphasis added);

(10) "Every opportunity was provided to the defendant and the plaintiff, Mr. Doerr, even attempted to assist in the inspection but could not find the stakes";

(11) The defendant could have retained a surveyor to find the stakes or he could have "insisted that the plaintiff show

him the corners exactly, but no such demand was made";

(12) "With no showing of intent, there would be no consideration of fraud. Again, since there is no accurate description, there is no showing of an intent to defraud";

(13) It "does not appear that Mr. Henry considered a case of fraud until some time after at least August of 1985";

(14) The fact that Mr. Henry "added a boat house ... almost a year after the contract.... which is not an improvement necessary to maintain the status quo ... does not indicate that the defendant, at the time, was considering a rescission of the contract. Even if the defendant so testifies, we reach that point that the defendant cannot lay behind the log and mislead the other party that he is satisfied with that transfer....";

(15) "Mr. Henry had every opportunity to examine the property.... prior to the transfer of the property and chose not to do so";

(16) The "transaction, while there may be questions in it, is a result of the parties trying to act on their own behalf, and ... a large number of people could have told either or both of the parties of that indefinite status if they had checked prior to the transaction; neither chose to do that";

(17) The boundary of the property sold "remains indefinite," and since an "indefinite description of property has been used over a period of time, there is no showing of any intent on the part of the plaintiff to defraud the defendant herein";

(18) "The change of description was given to the defendant in Mr. Songer's letter and also was testified to by the defendant and Mr. Doerr as to a telephone conversation prior to that time concerning the description. The attempt to show the survey was again made by Mr. Doerr immediately after the closing, no objection was indicated by the defendant at that time, no question was raised at that time. On that basis, the Court finds that the transaction was completed at that time, and therefore there is no showing of an intent to defraud; therefore, no finding of fraud by the Court.... If there was a difference, that they merged in that contract [which was] modified by another contract in writing which, in this case, was the deed, which indicated acceptance by the plaintiff";

(19) "While ... it may appear unfair, we still have that situation where [the defendants moved] without a thorough investigation," and bought "a 'pig in a poke'" and get only "the pig that is there and that's all. Nothing additional. Neither does it give you an action in fraud if you decide later you don't like the pig";

(20) The same "knowledge of those business transactions" which Mr. Henry said he had gained in Texas over "a long period of time" "would apply to property, even though he had not owned property with[in] the State of Oklahoma";

(21) The "findings above will cover all situations which have arisen in this case" and "indicate the basis for the Court's findings and judgment," which is "that the Plaintiff have a decree of foreclosure against the defendant."

It is clear that the trial court did not find that the Henrys knew prior to closing that they were getting less land than they had contracted for. Indeed the only findings of fact made by the trial court relevant to the issue of fraud raised by the defendants are these:

(a) No one, including the plaintiffs, knew where the boundary lines of the land the plaintiffs sold to the defendants were—and still did not at time of trial—and therefore by implication the trial court found that Plats 1 and 2 were false representations of facts which the plaintiffs made knowing they were false.

(b) The defendants had no legal right to rely on the plats and other representations of the plaintiffs concerning the boundaries of the land involved. This, we held, was an error of law.

(c) Corner "stakes were provided, at least at one time," to fulfill the contract requirement that seller "furnish survey

stakes at all corners of both plots." Based on (a) above, the locations had to be selected without knowing whether they were correct or not.

(d) *"[I]f* [Mr. Doerr] *made a false allegation* as to the description of the property and the staking of the corners" there "is no showing of an intent to defraud" the Henrys *because* the defendants had every opportunity to inspect and the plaintiff, Mr. Doerr, "even attempted to assist in the inspection *but could not find the stakes."* (Emphasis added.) Certainly the trial court did not find that Mr. Doerr did not make a false representation concerning the quantity of the land he had for sale.

(e) And finally, the trial court concluded that absent a showing of "an intent to defraud," the defendants had failed to make out a case of fraud.

Thus it can be seen that the trial court's conclusion that the defendants had not proved a case of fraudulent inducement of the contract was not based on a finding that the Doerrs had not induced the defendants to enter into the contract by misrepresenting the quantity of the property they had for sale, but on a finding that the Doerrs *did not intend* to defraud, which the court erroneously considered to be an essential element of the pleaded fraud—another error of law. In this regard we note that such finding was based on the further findings of what might be called the contributory negligence of the defendants in failing to (1) hire a lawyer; (2) hire a surveyor; (3) investigate further by talking to local inhabitants, all of whom were aware, in effect, that no one knew where any of the Pauline Bailey Survey lot lines were and (4) that the defendants made unnecessary improvements on some of the property. It goes without saying that fraud is a tort which contemplates that the buyer may rely on the forthright honesty of the seller and the correctness of his plats. The buyer had no duty to hire or interview others; and it is not a defense available to the seller of land that the buyer had no right to rely on the seller's representations concerning the quantum and location of the land being offered for sale.

The foregoing analysis of the trial court's review of the evidence makes it clear that although this court may disagree with the trial court's finding concerning the Doerrs' intent, we have not found it necessary to disagree with any material fact found by the trial court essential to the establishment of liability. We disagree primarily on the relevant law and its application to the basic facts accepted as true by the trial court.

As we pointed out in our opinion, actual fraud as defined by statute does not require that a false representation of a fact, or suppression of a material fact, be made with intent to deceive, but such fraud can also consist of "inducing" another "to enter into a contract."

Here, it is undisputed that the defendants were induced to enter into subject land transaction by the quantum of land represented in the two plats attached to the contract which were prepared at the request of the plaintiffs and based on information the plaintiffs supplied to Lambert. This, coupled with the trial court's finding that everyone living in the area knew that the Bailey survey lines were apparently not locatable, means that since the plaintiffs lived in the area, they knew it too, and having made a partial disclosure concerning the extent and location of their land, the plaintiffs were bound to reveal the rest of the story, namely, that they did not know where the boundary lines of Lots 31, 32 and 33 were. It is undisputed this vital information was suppressed.

The court does note, however, that an error was made in the damage award complained of. With respect to Mr. Henry's lost earnings this court awarded $45,000, when in fact the evidence presented at trial reflected an income reduction between 1984 and 1985 of only $40,191. At the same time we note that a substantial item of the relief pled and proved by the defendants was for rescission of the contract and restitution of the $40,000 they paid down on the subject property.

Finally, this court concludes that the defendants' claim for lost earnings should be denied because the evidence supportive of this element of damages lacks reasonable certainty. *Plummer v. Fogley*, 363 P.2d 238 (Okl.1961). The defendants' judgment is therefore modified to decrease the award to $63,649.70 which includes the restitution of the down payment and consequential damages sustained as the result of the plaintiffs' fraud.

The plaintiffs' petition for rehearing as supplemented is denied.

REIF and STUBBLEFIELD, JJ., concur.