Argued October 11, reversed and remanded November 21, 1916.

# CAPLES *v.* MORGAN.

(160 Pac. 1154.)

**Pleading—Amendment—Surprise.**

1. In action by landlord for rent installments, where defendant counterclaimed for being induced by false representations to execute a lease of the premises for enhanced rental, allowing defendant during trial over plaintiff's objection, to amend his answer so as to call his claim a setoff and recoupment instead of counterclaim, and to change the prayer to one that plaintiff take nothing and defendant be dismissed, was not error; it not being shown that plaintiff was surprised or her rights prejudiced thereby.

**Limitation of Actions—Defenses—Fraud.**

2. The statute of limitations cannot be urged against a mere defense, such as that defendant was fraudulently inveigled into the contract sued on, but such a defense lasts as long as the contract it affects; the statute of limitations applying only to one who seeks affirmative relief.

**Landlord and Tenant—Action for Rent—Questions for Jury—False Representations.**

3. In action for rent, where defendant sought to recoup damages for being induced by false representation to execute the lease for a higher rental than he would otherwise, the issue whether the false representation did have the effect of inducing defendant to agree to the higher price was for the jury's determination.

**Landlord and Tenant—Action for Rent—Recoupment.**

4. In an action for rent, that the tenant, by false representations of the landlord's agent that another party was seeking a lease of the premises at a higher price, was induced to execute the lease at such higher price, was a good defense by way of recoupment.

**Setoff and Counterclaim—"Recoupment"—Nature.**

5. "Recoupment" is the keeping back or stopping something which is due, and under the principles of the common law, recoupment could be invoked when defendant sustained damages from plaintiff's nonperformance of the contract sued on, in which case the damages to which the defendant was entitled could be abated from plaintiff's claim.

**Frauds, Statute of—Leases—Term for Years—Oral Negotiations.**

6. In an action for rent on five-year lease, where defendant sought recoupment of damages from false representation of plaintiff's agent that another party desired the lease at a higher price, inducing defendant to execute the lease at such higher price, the oral negotiations of the parties concerning the lease were inadmissible under Section 808, L. O. L., providing that leases for a longer period than one year are void if not in writing, and no evidence of such agree-

ment shall be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law.

**Fraud—Damages—Difference Between Liability Incurred for Rent and Rental Value of Premises.**

7. Where a tenant was induced to take a five-year lease of an apartment house at $10 instead of $8 per room per month, by false representation of landlord's agent that another party had offered to take the lease for the higher price, and set up such claim in recoupment in action by the landlord for installments of the rent, the measure of his damages was the difference between the agreed rent and the reasonable value of the premises as of the date the contract was made.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.    Statement by MR. JUSTICE BURNETT.

This is an action by Jane Caples against W. L. Morgan to recover sundry monthly installments of rent alleged to be due upon a five-year lease of real property in Portland, the execution of which and possession thereunder being admitted.

That anything is due is denied. Answering affirmatively, the defendant alleged, in substance, that he was the principal stockholder in a firm of architects engaged in the business of building apartment houses and family dwellings; that oral negotiations were entered into between the defendant and the agent of plaintiff for the erection upon the real property of the latter of an apartment house containing 71 rooms, to be leased to the defendant for the term of five years at the rate of $8 per room per month; that before the negotiations were completed and the lease finally executed the plaintiff's agent falsely represented to the defendant that a third party had offered to take a lease for that term at the rate of $10 per room per month, in which event, if accepted, the defendant firm would not be allowed to construct the building; that this representation was made for the purpose of inducing the defendant to agree to the larger rental; that, rely-

ing upon the statement mentioned, and believing it to be true, the defendant agreed to the lease in question at the larger rental, and as he says, "will be obliged for the remainder of the term of said lease to pay the sum of $2 per room per month more than he had agreed with said agent to pay for the same, or than said plaintiff was offered for same, or could have then or now receive from any other person therefor, or than same was then or is now worth, and defendant was, has been, and is damaged by reason thereof and thereby in the sum of $8,520." A demurrer to the further and separate answer on the ground that it did not state facts sufficient to constitute a cause of defense to the complaint or counterclaim against the plaintiff, and that the defendant's cause of action set forth as a counterclaim did not accrue within two years prior to the commencement of this action nor within two years prior to the filing of the counterclaim, was overruled.

Every allegation in the new matter of the answer was denied by the reply, except as expressly admitted therein. It admits that the agent was authorized to negotiate for and find a tenant for an apartment house to be erected on the property, and to negotiate for proposals to construct the same, but that he was not authorized to enter into such a lease, nor to conclude the contract for the construction of the building; that the defendant proposed to the agent to take a lease on the building to be erected for five years on the basis of $8 per room per month, but that the proposal was never accepted. It also admits that the agent represented that the third party had made an offer for a lease running for the same term at $10 per room per month, and avows that the plaintiff is informed and believes, and therefore alleges, that the offer had, in fact, been made; and, lastly, affirmatively avers the defense of

the statute of limitations, for that it appears that the alleged fraud was perpetrated April 11, 1910, whereas the answer was not filed until more than two years after that date.

A general demurrer to the new matter in the reply was sustained, apparently on the ground that the questions involved had been settled by the ruling on the demurrer to the allegations of the answer. During the progress of the trial, over the objection of the plaintiff, the defendant was allowed to amend his answer so as to call it setoff and recoupment instead of counterclaim, and by changing the prayer to the effect that the plaintiff take nothing and defendant be dismissed with his costs and disbursements. The jury found a special verdict to the effect that the statement of the agent that the third party had offered $10 per month was false, that defendant in taking the lease relied upon that offer, and that but for the offer he would have secured it at a rental of $575 per month for the whole building; and as a general verdict the jury found for the defendant. From the judgment rendered on this verdict, the plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Martin L. Pipes* and *Messrs. Flegel, Reynolds & Flegel,* with oral arguments by *Mr. Pipes* and *Mr. John W. Reynolds.*

For respondent there was a brief over the names of *Messrs. Bauer & Greene, Mr. A. H. McCurtain* and *Messrs. Malarkey, Seabrook & Dibble,* with oral arguments by *Mr. Thomas G. Greene* and *Mr. Ephraim B. Seabrook.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Complaint is made about permitting the amendment of the answer. It is not shown, however, that the plaintiff was taken by surprise or that her rights were prejudiced thereby. She could not have experienced any injury on that account; for, whereas the original answer demanded a judgment for the excess of the damages alleged over what should be found due to the plaintiff by the terms of the lease, the change allowed her to escape any judgment for this possible overplus.

2. Neither can the statute of limitations be urged against a mere defense of the kind here involved. Our statute stating the time within which actions may be brought refers to instances where the party claiming to have been defrauded institutes proceedings on his own behalf for the recovery of damages. It does not contemplate mere resistance of a claim founded upon a contract into which the defendant has been inveigled by the fraudulent conduct of the other contracting party. The rule is thus stated by Mr. Justice HENSHAW in *Hart* v. *Church,* 126 Cal. 471 (58 Pac. 910, 77 Am. St. Rep. 195):

"It is also true that, where a party seeks relief upon the ground of fraud or mistake, the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake; but a different case is presented where the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself asking affirmative relief. The three-year statute of limitations does not bar the defendant in such a case from objecting to the validity or to the enforcement of the contract upon the ground of fraud. It is not incum-

bent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time, and, when enforcement is sought against him, excuse himself from performance by proof of the fraud."

To like effect are the cases of *Evans* v. *Duke,* 140 Cal. 22 (73 Pac. 732); *State* v. *Tanner,* 45 Wash. 348 (88 Pac. 321); *Advance Thresher Co.* v. *Doak,* 36 Okl. 532 (129 Pac. 736). The injured party is not bound to presume that his adversary will at all events endeavor to enforce the contract which is corrupted with his own fraud, at least beyond what would be justly his due. A wronged individual may safely rest on a mere defense grounded upon the deceit of the other party so long as the contract itself is liable to be enforced. The taint is inherent in the agreement, and as a defense will last as long as the convention it affects.

The most difficult question to be determined is whether or not the false representation that the third party had offered $10 per month is material and vitiates the contract or is a basis of damage *pro tanto.* That the representation was false is established by the special verdict of the jury beyond our power to investigate. So far as the precise question thus presented is concerned, it is new in this state. There are many authorities which sustain the position of plaintiff. The argument is stated in *Williams* v. *McFadden,* 23 Fla. 143 (1 South. 618, 11 Am. St. Rep. 345), as follows:

"To entitle a party to maintain an action for deceit by means of false representations, he must, among other things, show that the defendant made false and fraudulent assertions in regard to some facts or facts material to the transaction in which he was defrauded, by means of which he was induced to enter into it. The misrepresentation must relate to alleged facts, or

to the condition of things as then existent. It is not every misrepresentation relating to the subject matter of the contract which will render it void or enable the aggrieved party to maintain an action for deceit. It must be as to matters of fact, substantially affecting his interests, not as to matters of opinion, judgment, probability or expectation"—citing 3 Sutherland on Damages, 484, and *Long* v. *Woodman,* 58 Me. 49.

The reasoning seems to be that the representation does not affect or pretend to affect the intrinsic qualities of the property under consideration; that the statement of the offer of the third party is but another way of saying that he has an opinion that the value is so much; that opinions are not material, and may be set down as "trader's talk." A fair statement of the rule relied upon by the plaintiff is found in *Beare* v. *Wright,* 14 N. D. 26 (103 N. W. 632, 8 Ann. Cas. 1057, 69 L. R. A. 409):

"It is apparent that the representation as to what others paid for the stock did not affect its value. It has not been found that there were any fiduciary relations existing between the parties, or that there were any other facts or circumstances giving rise to an implied agreement that the price paid by the vendor or others should be the price to the plaintiff. It is not found or admitted that there was any express contract to that effect. In the absence of special circumstances of that nature, a mere false statement as to the price paid by the vendor or others is not actionable deceit" —citing many authorities.

Again, in *Cole* v. *Smith,* 26 Colo. 506 (58 Pac. 1086), the court, speaking by Mr. Chief Justice CAMPBELL, says:

"While a statement by the vendor that property cost him a certain sum of money is not a mere expression of opinion, but a statement of fact which, if relied upon and proved to be false, may be a ground for re-

scinding a contract entered into upon the faith of it, it is quite uniformly held that a statement by a vendor that he has been offered a certain sum for his property, or that it is of any given value, are not such representations of fact as to be the foundation of an action.''

In *Dingle* v. *Trask,* 7 Colo. App. 16 (42 Pac. 186), a creditor of a merchant falsely stated to him that another creditor was about to attach the property of the merchant, and so induced the latter to give him a mortgage upon his goods. The court held that this false statement did not constitute ground for an action of deceit looking to the cancellation of the mortgage. In *Dillman* v. *Nadlehoffer,* 119 Ill. 567 (7 N. E. 88), it was held that a false statement by the defendant that he had been offered $25,000 for a certain patent furnished no ground for rescission of the contract induced by this statement. In *Noetling* v. *Wright,* 72 Ill. 390, the syllabus says:

''A purchaser cannot maintain an action against his vendor for false statements in regard to the value of the property purchased, or its good qualities, or the price he has been offered for it.''

Like cases are these: *Hauk* v. *Brownell,* 120 Ill. 161 (11 N. E. 416); *Boles* v. *Merrill,* 173 Mass. 491 (53 N. E. 894, 73 Am. St. Rep. 308); *Holbrook* v. *Connor,* 60 Me. 578 (11 Am. Rep. 212); *Hemmer* v. *Cooper,* 8 Allen (Mass.), 334; *Page* v. *Parker,* 43 N. H. 363 (80 Am. Dec. 172); *Mackenzie* v. *Seeberger,* 76 Fed. 108 (22 C. C. A. 83); *Brown* v. *Castles,* 11 Cush. (Mass.) 348.

Even upon authorities holding that the simple representation falsely made of an offer for the property being sold will not vitiate the contract, many exceptions have been engrafted in the progress of time.

For instance, where the party making the representation has or affects to have superior knowledge as to the value of the property, while the other party is ignorant and relies upon the statement thus made, or where the property is at a distance so great that it is impracticable for the buyer to examine the same, the representation is held to be material, and its falsity will avoid the contract. On the theory that a statement of an offer is but the expression of some other man's opinion, this court has restricted the doctrine in *Olston* v. *Oregon Water Power & R. Co.*, 52 Or. 343 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915, note), where it is held that a statement of an opinion is necessarily based on a fact or carries with it such an inference that it can be interpreted as a statement of fact, and where it is known to be false and made with intent to deceive, it may be actionable.

On the other hand, there are many authorities indicating that the trend of judicial thought is toward the doctrine that, where a falsehood is uttered in a manner calculated to and which does swerve the judgment of a reasonably prudent man under all the circumstances, it will work the destruction of the contract or an award of damages in favor of the injured party. If, notwithstanding the deceit, he makes an independent investigation of the matter, and through that method forms his judgment and decision, he must abide by the resultant contract under the doctrine of *Wimer* v. *Smith*, 22 Or. 469 (30 Pac. 416), for thus it is made to appear that he did not rely upon the cozenage of the other party. The case of *Strickland* v. *Graybill*, 97 Va. 602 (34 S. E. 475), directly holds the doctrine that a false representation about the offer of another directly affects the value of the property in question. So do *Ives* v. *Carter*, 24 Conn. 392, and

*Seamen* v. *Becar,* 15 Misc. Rep. 616 (38 N. Y. Supp. 69). Cases like *Prescott* v. *Brown,* 30 Okl. 428 (120 Pac. 991), *Stauffer* v. *Hulwick,* 176 Ind. 410 (96 N. E. 154, Ann. Cas. 1914A, 951), *Kehl* v. *Abram,* 210 Ill. 218 (71 N. E. 347, 102 Am. St. Rep. 158), *Fottler* v. *Moseley,* 179 Mass. 295 (60 N. E. 788), and *Chisum* v. *Huggins* (Okl.), 154 Pac. 1146, are all complicated more or less with fiduciary relations existing between the parties or ignorance of the defrauded party who relies upon the superior knowledge of the other, or where opportunity to examine the property has been denied to the one who suffers from the fraud. A valuable case with an exhaustive note appended is *Kohl* v. *Taylor,* 35 L. R. A. (N. S.) 174, reported also in 62 Wash. 678 (114 Pac. 874).

3. We think the better argument may be thus stated: The ground for saying that an opinion as to value is negligible is that it is impossible to prove the falsity of a mere matter of judgment about which honest men may reasonably differ. But even this rule has been restricted as above stated. The reason, however, fails when a statement is made of a fact the truth of which may be demonstrated or disproved. In the present instance the third party either made the offer or he did not make it. That fact is capable of proof or refutation. There can be no honest difference of opinion about whether or not he made the offer. Again, the statement of the fact of the offer at the increased price was made for the purpose of inducing the defendant to agree to the higher price. It was intended to operate in that direction, and whether or not it did have that effect is for the jury to determine.

4. If demonstrable falsehood has been used to induce the execution of a contract in a manner calculated in the judgment of a jury to influence the deci-

sion of a reasonably prudent man under all the circumstances, it is sufficient to defeat the agreement at the election of the injured party. Under such conditions the court will not busy itself to determine how much untruth may be injected into a transaction without spoiling it. It is wrong to lie, and a person who has thus set a trap for the other party cannot be heard to complain that the latter should not have walked into the snare. It better comports with common honesty to condemn falsehood as a means of constructing a contract. There was no error in overruling the demurrer to the answer on that ground.

5. It remains for us to consider to what extent the recoupment urged by the defendant shall be allowed to prevail in this action. This is not an action to rescind the contract. On the contrary, the defendant proceeds in affirmance of the agreement, does not allege a return of the property which he received under the lease, but as originally framed demands an affirmative judgment for damages in excess of what remained due on the rent. The amendment whereby he waives such a judgment and uses his claim for damages as a mere defense does not alter the case. Recoupment, as defined by Mr. Justice Moore in *Krausse* v. *Greenfield,* 61 Or. 502, 507 (123 Pac. 392, 394, Ann. Cas. 1914B, 115), is the keeping back or stopping something which is due. He says:

"Under the principles of the common law, 'recoupment' could be invoked when the defendant sustained damages by reason of the plaintiff's nonperformance of his part of the contract sued on, in which case the damages to which the defendant was entitled could be abated from the plaintiff's claim."

The question then is: By what rule shall it be determined how much the defendant is entitled to hold back

from the amount due on the rent, conceding, as we must under the verdict, that he was imposed upon by the fraud of plaintiff's agent? The plaintiff requested and the court refused the following instructions to the jury:

"If you believe from the evidence that the rental under this lease was a reasonable rental at the time the lease was entered into, taking into consideration the rents then prevailing, you must allow defendant nothing on his counterclaim. If you find for defendant on his counterclaim, you should determine how much less valuable this lease was to defendant than if Phil Gevurtz had made the offer of $10 per room as represented, and allow such amount to defendant as his damages. In assessing damages, if any are assessed, you are not to take into consideration any decrease in the rental value of the property which has occurred since April 11, 1910, the date of this lease, for plaintiff could not be charged with any loss accruing to defendant by a decline in the rental value."

It appears from the record that the plaintiff offered to prove what was the reasonable rental value of the building at the time the defendant took the lease, but this offer was denied, over the plaintiff's exception. The theory adopted by the court is embodied substantially in this instruction to the jury:

"There can be no middle ground in this case on the question of the amount of damages defendant has sustained, if any. If you find the issues in favor of the defendant, then your duty would be to ascertain the amount of credit he was entitled to. In doing this you must find from the evidence one of two possible facts: Either that defendant could and would have secured said lease at a rental of $575 per month but for said alleged false representation, or, on the other hand, that he could and would not. If you find the fact to be that defendant would have secured said lease at the monthly rental of $575 per month but for said rep-

resentation, defendant has been damaged to the extent of $135 per month for five years, and your verdict should in such case be for defendant; but if you fail to so find, then plaintiff is entitled to a verdict for the sum of $6,515.05.''

The sum of $575 alluded to in this instruction was what the defendant claims was orally agreed upon as the rental of the building per month prior to the execution of the written lease.

6. As a standard for the measurement of damages the oral negotiations of the parties must be laid out of the case because of the provisions of Section 808, L. O. L. It is there stated:

''In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law. * * 6. An agreement for the leasing, for a longer period than one year, or for the sale of real property, or of any interest therein. * * ''

This enactment, more stringent in its terms than most statutes of fraud in other states, not only says that an oral agreement is void, but goes further, and interdicts any evidence of such a convention. For the purposes of this case, therefore, the oral testimony about what was offered for the lease on the one hand and accepted on the other is utterly of no value whatever.

7. It is stated by Mr. Justice BEAN, in *Robertson* v. *Frey*, 72 Or. 599, 604 (144 Pac. 128, 130):

''The general rule of damages in cases of fraud is that the party defrauded is entitled to recover the amount of loss caused by the fraud of the other party,

or damages adequate to the injury which he has sustained. The recovery must be limited to the actual loss: 20 Cyc. 130. There are a great number of cases in which the rule is stated that the measure of damages is the difference between the value of the thing purchased and the price paid, or in case of exchange the difference between the value of that with which the injured party was fraudulently induced to part and what he received."

In *Smith* v. *Bolles*, 132 U. S. 125 (33 L. Ed. 279, 10 Sup. Ct. Rep. 39), there was before the court a case wherein the plaintiff sought to recover damages which he had suffered by reason of the purchase of stock in a corporation induced by false and fraudulent representations made to him by the defendant. Mr. Chief Justice FULLER said:

"If the jury believed from the evidence that the defendant was guilty of the fraudulent and false representations alleged, and that the purchase of stock had been made in reliance thereon, then the defendant was liable to respond in such damages as naturally and proximately resulted from the fraud. He was bound to make good the loss sustained, such as the moneys the plaintiff had paid out and interest, and any other outlay legitimately attributable to defendant's fraudulent conduct; but this liability did not include the expected fruits of an unrealized speculation. The reasonable market value, if the property had been as represented, afforded, therefore, no proper element of recovery. Nor had the contract price the bearing given to it by the court. What the plaintiff paid for the stock was properly put in evidence, not as the basis of the application of the rule in relation to the difference between the contract price and the market or actual value, but as establishing the loss he had sustained in that particular. If the stock had a value in fact, that would necessarily be applied in reduction of the damages."

81 Or.—45

The matter may be likened to a statement of account between the parties wherein the defendant's gross damages may be set down as the amount of rent which he agreed to pay. With this he must be credited. In reduction of this he must be charged with the reasonable value of that which he received. If the value of what he has received is less than or equal to the amount of gross damages, the verdict should be for the defendant under the present form of the pleading; but, if the value of what he received is greater than his gross damage, the verdict should be for the plaintiff in the amount of the difference. The written lease, affirmed as it is by the defendant, is the contract by which the parties must be bound, subject to abatement in damages by reason of fraud alleged to have been practiced on the defendant. To refer to the oral convention said to have been had between the parties as a standard for fixed damages would be to make a new contract for them and to install as a rule governing their conduct what the statute says is utterly void and beyond the pale of testimony. The defendant may have been outwitted in the contest over the price to be paid; but it does not follow that because the plaintiff was at fault, we must violate the statute of frauds and establish a contract which the parties did not make and which the law says is null and of no effect. In correcting the balance of the scale disturbed by the fraud of the plaintiff, we must not go as far the other way beyond the reasonable value of the property which he received. The question about the abatement of the rental value must therefore be decided by what is the difference between what the defendant agreed to pay and the reasonable value of what he received as of the date the contract was made. He took his chances about fluctuation in the market

value of rents, and a subsequent decline cannot affect the case. If, indeed, the rent was reasonably worth the stipulated price, or if he has himself recouped his loss, he has no cause of complaint, for damages can be awarded only to one who has been really injured.

For these reasons, the judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE HARRIS concur.