Argued January 31; reversed March 6, 1945

HANSEN ET UX. *v.* HOLMBERG

(156 P. (2d) 571)

Before BELT, Chief Justice, and ROSSMAN, KELLY, LUSK and BRAND, Associate Justices.

*Jesse G. Warrington,* of Portland (Phelps & Burdick, of Portland, on the brief), for appellants.

*Floyd D. Moore,* of Portland, for respondent.

LUSK, J.

This is an action in deceit brought to recover damages alleged to have been sustained by the plaintiffs as the result of false representations made by the defendant inducing the purchase from the latter of personal property constituting the equipment of a beer tavern in Portland, Oregon.

After the jury had returned a verdict for the plaintiffs, the court, on motion, granted judgment for the defendant *non obstante veredicto,* and plaintiffs have appealed.

The single question for decision is whether the evidence is sufficient to support the verdict for the plaintiffs.

The complaint alleges in substance that the chief value of the property purchased was in connection with the business of selling beer by the glass; that the defendant "falsely and fraudulently stated to plaintiffs as a fact that plaintiffs could purchase from the brewery with which the defendant was doing business sixteen (16) barrels of beer per week, which was sufficient beer for the plaintiffs to carry on said business"; and that "defendant knew at the time of making

said representation that the sale of beer was to be curtailed by the refusal of the brewery to deliver said beer and by the Government and local regulations, and that an order had already gone out curtailing the sale of said beer, and that the plaintiffs would not be able to purchase said beer in the future." It is further alleged that after the purchase of the property the plaintiffs discovered that they were unable to get any beer, that the value of the equipment they received in the transaction was not in excess of $250.00, and they were therefore damaged in the sum of $2,000.00.

Payment of the purchase price of $2,250.00 is conceded, and the fact that the plaintiffs were unable to get beer except in the first week after taking possession of the tavern is proven.

The plaintiffs, husband and wife, had conducted a retail beer business in Portland during the period from November, 1942, to August 10, 1943, when they sold out. Later their attention was called to defendant's place, known as "Babs' Tavern", by Lloyd J. Ruble, a business chance broker with whom the defendant had listed the property for sale, and on September 16, 1943, they went to Babs' Tavern, and, after inspecting it and discussing the matter with its proprietor, the defendant, they agreed to buy it for $2,250.00, and paid $50.00 to the defendant to bind the bargain. The next day the deal was concluded by payment of the balance of the purchase price and execution and delivery to plaintiffs of a bill of sale.

■ The plaintiff Harry Hansen testified as follows concerning the representation made to him by the defendant:

"Q What conversation was had?
"A Well, we talked about the fixtures and stuff he had there, so it went on. We asked him about

the beer and he said, 'You will get fourteen to six-
teen kegs a week.' And he says, 'That is what I am
getting.' So at the same time he says, 'If Dewey
was here,' he said, 'he would verify that statement.'
So that at the same time Dewey came in. He
called him over there and made us acquainted with
him, and he told Dewey what he had told us there,
see, and Dewey says, 'Yes,' he says, 'that is right.
He got sixteen kegs this week'.''

The man referred to as ''Dewey'' was Dewey Son,
the representative in Portland of United Breweries
Company of Walla Walla, Washington, from which
the defendant had been buying his supply of beer. The
testimony of Harry Hansen, above quoted, is sub-
stantially corroborated by that of his wife and of
Ruble, who were present during the conversation. Mrs.
Hansen's testimony as to the representation was as
follows:

''Q Was anything said about the source of his
supply or how long it would continue?

''A Well, he said if we bought the place—I can
give you the exact words: He says, 'If you buy the
place,' he says, 'you will continue to get the beer
just as I have. You will get it.'

''Q Then you mentioned the fact that Mr. Dewey
—I think his name, counsel says, is Son, or some-
thing like that, the surname. His Christian name
is Dewey. You say this Mr. Son came in?

''A Why, Mr. Holmberg, when he told us that
—well, right at that point of our conversation Mr.
Ruble spoke up and he said, 'Now,' he says, 'I want
this business,' he says, 'to be legitimate', he says,
'and I want it to be just as you represented it,
because Mr. and Mrs. Hansen have done business
with me before and I want to know that it is on
the square.' And he said, 'Yes,' and he said, 'I
wish Dewey would come in because,' he says, 'he
would tell you how much beer you would get.' And

he hadn't any more than got the words out of his mouth than Dewey walked in the front door.

"Q Now who was speaking when you say 'he', Mrs. Hansen?

"A Mr. Holmberg. And he just got talking about it when Dewey walked in the front door, and he called him over and he made him acquainted with us, all three of us, Mr. Ruble, my husband and I, and he said, 'Are you thinking about buying the place?' He said, 'I told them,' he says, 'how much beer I am getting here, and they would get the same quota that I have been getting; you would give them the same quota, fourteen kegs every week?' And he said, 'Yes'—Dewey said."

A witness testified that a few days before the transaction in question he heard the defendant say: "After the first of the month I will be running out of beer and probably not any more until after the first of the year". Another witness swore that the defendant said to him at about the same time: "I got a chance to unload the place and make some money, and I think I will unload it because I think I am running out of beer." There was also evidence of an admission of the defendant, made after the transaction, that for some time he had had knowledge that his beer supply would be cut off. The evidence discloses that at the time of the transaction, and for a considerable period before, the supply of beer, as of many other products during the present war, was limited and the breweries had placed the retail trade on a quota basis. The plaintiffs themselves had previously conducted a beer business on that basis. But, so far as is shown, they had no knowledge of the quota allotted to Babs' Tavern and the probability or otherwise of the continuance of a supply of beer from United Breweries Company other than the information given to them by the de-

fendant. The evidence of Dewey Son is to the effect that the industry as a whole was very insecure owing to the shortage of raw materials. He testified that he himself did not have very much advance notice that the supply was about to be cut off, although there were rumors to that effect. There is no evidence that the plaintiffs had heard such rumors. Upon the whole evidence the jury was warranted in finding, as presumably it did, that the defendant, knowing that the supply of beer which he had been receiving was about to be stopped, falsely stated the contrary to the plaintiffs for the purpose of inducing them to enter into the transaction. The trial judge, however, was of the opinion that the representation was not one of fact but a mere prediction or expression of opinion, and for that reason granted judgment for the defendant notwithstanding the verdict. The case turns upon whether this is a correct application of the law.

■ It is, of course, fundamental that a representation claimed to be fraudulent must be as to a material fact, and mere expressions of opinion are ordinarily not actionable. *Horner v. Wagy*, 173 Or. 441, 146 P. (2d) 92, where numerous Oregon cases are reviewed. Erroneous predictions as to the future conduct of third parties will ordinarily not afford a basis for an action in deceit. 26 C. J., Fraud 1089, § 25 C. J. S. Fraud, 233, § 11. But, when the cases applying this rule are examined, it will be seen that they lack an element which is present here, namely, actual knowledge of the speaker that his prediction is false. See *Ball v. Associated Oil Co.*, 151 Or. 383, 390, 50 P. (2d) 125; *Pace v. Edgemont Investment Co.*, 138 Or. 32, 37, 4 P. (2d) 633 (in which the court was at pains to point out that the representations were not made in bad faith or

wilfully false); *J. C. Corbin Co. v. Preston,* 109 Or. 230, 244, 212 P. 541, 218 P. 917; *Davis v. Reynolds,* 107 Me. 61, 77 Atl. 409; *Hazlett v. Wilken,* 42 Okla. 20, 140 P. 410; *Western Townsite Co. v. Novotny,* 32 S. D. 565, 143, N. W. 895.

As early as *Smith v. Griswold,* 6 Or. 440, this court held that a knowingly false representation of opinion was actionable. The plaintiff there had certain claims against the government amounting to $1,375.00, which he sold to the defendant for $300.00 upon the representation of the defendant that for various reasons the plaintiff would be unable to collect in excess of that amount. One of the claims was for the use of a mule furnished in the Indian war of 1855-6. The allegation in the complaint was that the defendant represented that nothing would be allowed for the mule and not more than $300.00 would be paid on all the claims, and that he (Griswold) knew these statements were false. These were held to be sufficient allegations of fraud, the court saying:

"If it had been alleged that he said that in his opinion no pay would be allowed for the mule, and that no more than three hundred dollars would be paid in all, and it were further alleged that when he pretended to express such an opinion he knew to the contrary, this would have been deceit, and have been *suggestio falsi,* and would have made him responsible so that he could not profit by his fraud."

In *Olston v. Oregon Water Power & R. Co.,* 52 Or. 343, 96 P. 1095, 97 P. 538, 20 L. R. A. (N. S.) 915, the defendant pleaded a release signed by the plaintiff as a defense to an action for death by wrongful act. The plaintiff alleged in his reply that the release was obtained by the false representations of the defendant's agent to the effect that it was useless for the plaintiff

to get legal advice concerning the matter, and that the attorney and legal advisor of the defendant company had authorized the company and its agents to tell the plaintiff that it was not liable in damages on account of death of the deceased. The court held that the representation, if proved, was actionable, and quoted as follows from *Stebbins v. Eddy,* 4 Mason (U. S., 414, 423, Fed. Cas. No. 13,342:

> "The affirmation of belief is an affirmation of a fact—that is, of the fact of belief—and if it is fraudulently made to mislead or cheat another, to abuse his confidence, or to blind his judgment, it is in law and morals just as reprehensible as if any other fact were affirmed for the like purpose."

This is but a statement in different language of Lord Bowen's celebrated dictum: "The state of a man's mind is as much a fact as the state of his digestion". *Edgington v. Fitzmaurice,* L. R., 29 Ch. Div. 459, 483. Similarly it was said in *Pennebaker v. Kimble,* 126 Or. 317, 328, 269 P. 981, that "the circumstances may be such that if one misrepresents his condition of mind the representation is actionable", citing among other cases *Olston v. Oregon Water Power & R. Co.,* supra. In *Patterson v. Western Loan & Building Co.,* 155 Or. 140, 62 P. (2d) 946, the court, while recognizing the general rule that statements of a vendor or his agent that a purchase of a thing offered for sale would be a good investment is a matter of opinion only and not actionable, held that that rule was not applicable in a case where the subject offered for sale was stock to be issued by an insolvent corporation, and the representation that its purchase would be a good investment is made to a person ignorant of the facts who believed it to be true and acted upon it to his detriment.

We have also held actionable a false statement that an offer had been made by a third person, notwithstanding the view of some courts that such a statement is but an expression of another man's opinion *(Caples v. Morgan,* 81 Or. 692, 160 P. 1154, LRA 1917B 760) ; and that when one promises another to do something in the future as a consideration or inducement for the latter to part with his money or property, or doing an act in reliance thereon, and at the time of making the promise the promisor has no present intention to perform, the transaction is fraudulent and that the existence of the intention not to perform the promise at the time of its making constitutes a fraud. *Bond v. Graf,* 163 Or. 264, 269, 96 P. (2d) 1091; *Sharkey v. Burlingame Co.,* 131 Or. 185, 193, 282, P. 546.

■ The rule underlying all these decisions is, as stated in 23 Am. Jur., Fraud and Deceit, 790, § 32, "that the expression of an opinion not in reality entertained may constitute actionable fraud where it is stated falsely and with intent to deceive." See to the same effect 26 C. J., Fraud, 1093, § 26; 37 C. J. S. 237, § 12; and annotation following *Palmetto Bank & Trust Co. v. Grimsley,* 134 S. C. 493, 133 S. E. 437, 51 A.L.R. 42, particularly pages 63 and 68, and cases cited in the notes. Within that rule, if the testimony on behalf of the plaintiffs is to be accepted, the conduct of the defendant was fraudulent, because the evidence warrants the conclusion that the defendant, with the intent to deceive the plaintiffs and to induce them to purchase the property, in effect falsely stated to them that in his opinion they would continue to get the quota of beer which he himself had been receiving. The materiality of the representation is evident, for the plaintiffs entered into the transaction with the view of engaging

in the retail beer business at Babs' Tavern, and it may be assumed that they would not have made the purchase had they known, as the defendant did, that the supply of beer would shortly be stopped.

 The defendant argues that the plaintiffs did not reply upon the representation but on their own judgment, citing *Baker v. Casey,* 166 Or. 433, 437, 112 P. (2d) 1031, and *Grady v. Day,* 104 Or. 340, 353, 206 P. 855. This conclusion is said to be justified by the plaintiffs' past experience in the beer retailing business in Portland, their inspection of the premises, and speed in closing the deal without any urging on the part of the defendant. The plaintiffs' experience in the beer business in Portland does not warrant us in saying as a matter of law that they did not rely on the representation, for there is no evidence that they had any information concerning the supply of beer for Babs' Tavern, other than that imparted to them by the defendant, and their general knowledge that the retail dealers as a whole were operating on a quota basis. Plaintiffs' inspection of the premises was not made for the purpose of learning about the future supply of beer, nor could it be expected to throw light on that subject. Moreover, the fact that the plaintiffs made some investigation does not necessarily deprive them of the right to rely on the representation. *Mercer v. Parker,* 124 Or. 89, 92, 262 P. 948; *Larsen v. Lootens,* 102 Or. 579, 592, 194 P. 699, 203 P. 621. As the latter case shows, this rule may be applicable even though the parties are dealing at arm's length. The question whether a party is to be concluded by such investigation as he has made is ordinarily one for the jury. *Horner v. Wagy,* supra. It might well be argued in this case that defendant, by referring the

plaintiffs to the representative of the brewery for confirmation of his statement, forestalled investigation that otherwise they would have made. The ''speed in closing the deal'' was at most an element for the jury's consideration in deciding whether the plaintiffs relied on their own judgment or the defendant's representation.

■ Closely akin to the foregoing contention is the argument that the representation was such as would not have deceived a person of ordinary prudence. See *Wheelwright v. Vanderbilt,* 69 Or. 326, 328, 138 P. 857. It may be stated as a broad generalization that there is a duty on the part of a representee to use some measure of protection and precaution to safeguard his interests. 23 Am. Jur., Fraud and Deceit, 960, § 155. Courts have differed somewhat in their application of this principle, but this court has approved the view that it is better to encourage negligence in the foolish than fraud in the deceitful. *Larson v. Lootens,* supra, 102 Or. at p. 592. See 23 Am. Jur., Fraud and Deceit, 948, § 146. We think that both morally and legally there is wholesome doctrine in the words of Mr. Justice BURNETT in *Caples v. Morgan,* supra, 81 Or. at p. 702:

> ''If demonstrable falsehood has been used to induce the execution of a contract in a manner calculated in the judgment of a jury to influence the decision of a reasonably prudent man under all the circumstances, it is sufficient to defeat the agreement at the election of the injured party. * * * It is wrong to lie, and a person who has thus set a trap for the other party cannot be heard to complain that the latter should not have walked into the snare. It better comports with common honesty to condemn falsehood as a means of constructing a contract.''

If it be said that it would have been folly for the plaintiffs to rely on the defendants' unsupported statement concerning the continuance of a supply of beer to Babs' Tavern, it at least was in the province of the jury to find that, when that statement was backed up by the assurance of the representative of the brewery which was furnishing the beer, the plaintiffs were justified in acting upon it; and the fact that they relied upon the statement of the latter as well as that of the defendant would not exonerate the defendant, provided his representation constituted a material inducement. 23 Am. Jur., Fraud and Deceit, 946, § 145; *Edgington v. Fitzmaurice,* supra. It would have been permissible under the evidence to find that the defendant referred the plaintiffs to Dewey Son for confirmation of his statement, knowing or believing that confirmation would be forthcoming, and that Son himself was aware of the falsity of the representation. One guilty of fraud cannot escape responsibility by sending his victim to a confederate for an opinion. *Barron v. Myers,* 146 Mich. 510, 512, 109 N. W. 862; *Graham v. Moffett,* 119 Mich. 303, 310, 78 N. W. 132, 75 Am. St. Rep. 393.

Thus far, we have treated the representation as purely an expression of opinion, but, in view of the unequivocal language in which it was couched and its corroboration by the representative of the brewery, it may also be considered as conveying the idea, not put into words but implied by the words used and the circumstances, that the defendant and the brewery had entered into an arrangement under which the latter had agreed to continue to supply beer to Babs' Tavern in the future as it had done in the past. So considered, the representation would be one of existing fact. The

language of the representation is to be interpreted by the effect which it would produce upon an ordinary mind, and it was for the jury to determine its meaning. *Downey v. Finucane,* 205 N. Y. 251, 98 N. E. 391, 40 L. R. A. (N. S.) 307; 23 Am. Jur., Fraud and Deceit, 777, § 25. See, also, Restatement, Torts, Vol. 3, 66, § 527.

Under either view the representation was ''demonstrable falsehood''. And, since the jury by its verdict has necessarily found, upon competent evidence, that the representation was made, that it was knowingly false, and made for the purpose of inducing the plaintiffs to enter into the transaction, and that they relied upon it to their damage, the verdict should have been permitted to stand.

For the reasons herein given the judgment for the defendant, notwithstanding the verdict, is reversed, and the cause remanded with directions to reinstate the judgment for the plaintiff upon the verdict.