70 F.3d 1278
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HUNTINGTON BANK, INC., a Kentucky banking corporation and
trustee of the Mariette G. Howell Trust, Plaintiff-Appellant,
v.
GILCHRIST TIMBER COMPANY, a Delaware corporation, Defendant,
and
Miller, Nash, Wiener, Hager & Carlsen, a partnership,
Defendant-Appellee.
 No. 94-35575.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 16, 1995.
Decided Nov. 30, 1995.
 
 Before: BROWNING, RYMER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Huntington Bank, as trustee for the Mariette G. Howell Trust, appeals the district court's summary judgment in favor of Miller, Nash, Wiener, Hager & Carlsen ("MIller Nash") in its action for fraud, negligent misrepresentation, and breach of fiduciary duty. It also appeals the denial of additional discovery after the discovery cut-off date and the motion for summary judgment had been submitted. We have jurisdiction, 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Huntington points to a number of specific respects in which it believes that the court was wrong in what it found. Because our review is de novo, Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir.1990), we will not address each citation of error individually but rather shall focus on what the appeal turns on as we see it. We conclude that the key questions are whether there is a triable issue of fact as to an attorney-client relationship between Miller and the Trust or its beneficiaries; whether there is a triable issue of fact that Miller defrauded the Trust in connection with the value of the stock that John Howell gave his consent for the Trust to sell to the company; and whether Miller owed the Trust or the beneficiaries a duty of care under Oregon law.
 
 
 4
 We are mindful that "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Under Oregon law, fraud must be proven by clear and convincing evidence, Dizick v. Umpqua Community College, 599 P.2d 444, 448 (Or.1979); breach of fiduciary duty, by a preponderance of the evidence, Lindland v. United Business Invs., Inc., 693 P.2d 20, 25 (Or.1984).
 
 
 5
 * Huntington contends that Miller Nash breached a fiduciary duty by representing Gilchrist Timber and the Trust and the beneficiaries during the stock sale, thereby creating a conflict of interest. Although Miller Nash did represent the Mariette G. Howell Estate in connection with valuing the Howell stock for estate tax purposes, there is no evidence of an attorney-client relationship with the Trust. See In re Conduct of Weidner, 801 P.2d 828, 837 (Or.1990) (putative client must show his subjective intent to enter relationship, and evidence of objective facts supporting subjective intent, notice to the lawyer of that intent, that the lawyer shared the intent, or that the lawyer acted to induce a reasonable person in client's position to rely on lawyer's professional advice). While there is evidence that John Howell (and other members of the Howell family) trusted Robert Miller, John Howell's acknowledgment that Miller represented the company is uncontradicted. Likewise, there is no evidence that the then-trustees of the Trust (Frank and Stewart Gilchrist) thought that Miller was the Trust's lawyer or reasonably could have thought that he was. To the contrary, Miller was instructed by Frank Gilchrist in his capacity as President of Gilchrist Timber to open a new file for the company on the potential purchase of the Howell stock. It is undisputed that he did this because of the Trust's impact on the company's status as a Subchapter S corporation. By the same token, there is no evidence that Miller Nash intended to form a lawyer-client relationship with the Trust or its beneficiaries. In the circumstances, evidence that Miller undertook legal research about QSSTs and communicated with Frank and Stewart Gilchrist about the possible purchase of the Howell stock held by the Trust does not create a genuine issue that Miller may also have been acting as counsel for the Trust, or the trustees, or the beneficiaries, in connection with the sale. Finally, that the then-trustees may have themselves been in a conflict position as officers or shareholders is immaterial because that conflict was known to all concerned, including to the trustor who effectively waived the potential conflict in the instrument creating the Trust. As Huntington has not raised a triable issue about the existence of an attorney-client relationship, Miller Nash cannot be liable for breach of duty on that account.
 
 
 6
 Huntington's argument that even if Miller Nash did not represent the trust directly, it did represent Frank and Stewart Gilchrist as executors of the Estate and thus, as trustees, fails for the same reasons. Whether or not Miller Nash's retention by the Estate was ever terminated, there is no evidence that the firm was retained by the trustees to act for them, or for the Trust. Huntington's related argument--that Miller Nash had a "special relationship" with the Trust because it represented th co-executors, who themselves owed the Trust as a beneficiary of the Estate a fiduciary duty, also fails because there is no evidence that Miller Nash breached any duty that it had in connection with valuing the Howell stock for estate tax purposes.
 
 
 7
 Along the same lines, Huntington argues that a fiduciary duty arises under Oregon law where the parties are in a "special relationship" involving dependency and control. However, the cases upon which it relies have simply recognized that a party may recover for negligently inflicted economic loss when the other party to a contractual relationship is "subject to a standard of care independent of the terms of the contract." See, e.g., Georgetown Realty, Inc. v. Home Ins. Co., 831 P.2d 7, 12 (Or.1992); Eulrich v. Snap-On Tools Corp., 853 P.2d 1350, 1357 (Or.App.1993), vacated on other grounds, 114 S.Ct. 2731 (1994). Here, there is neither a contractual relationship between the Trust or its beneficiaries and Miller Nash, nor, as we have explained, an attorney-client relationship such that Miller Nash independently owed the Trust or its beneficiaries a duty of care. We have no reason to believe that the Oregon courts would extend the law as Huntington suggests.
 
 
 8
 Finally, Huntington contends that Miller Nash misused confidential information acquired in the course of its work for the Estate and new, secret information about the Trust and its beneficiaries obtained between February 1986 and the New Orleans meeting. In the absence of an attorney-client relationship between the Trust or its beneficiaries and Miller Nash, this contention must also fall. While the firm did have access to information about the trustees and the beneficiaries, partly through representing the Estate and partly through representing the company, there is no evidence that it was improperly used to disadvantage another client.
 
 B
 
 9
 Huntington contends that Miller Nash defrauded the Trust and its beneficiaries by failing to advise John Howell that Gilchrist's favorable Subchapter S tax status might be preserved by reforming the trust, and by failing to disclose the true value of the stock.
 
 
 10
 Even if a reasonable jury could conclude that Miller's failure to mention the possibility of reforming the trust to conform with the requirements of Subchapter S amounted to a material misrepresentation, Huntington has failed to show that the trier of fact could find by clear and convincing evidence that Miller knew the representation was false or acted with reckless disregard of its truth or falsity. Miller knew that petitioning the court for reformation was a possibility; he acknowledged it in a memorandum. But there is no evidence that Miller considered a QSST to be a feasible option. Indeed, the only available evidence--Miller's notation reminding himself to inquire into the "problems created" by pursuing a reformation--indicates that Miller had doubts about the viability of reformation.
 
 
 11
 "Erroneous predictions as to the future conduct of third parties" are not actionable absent "actual knowledge of the speaker that his prediction is false." Hansen v. Holmberg, 156 P.2d 571, 573 (Or.1945). Here, Miller essentially predicted that reforming the Trust was not feasible. In retrospect, this prediction may have been wrong, but there is no indication that Miller had "actual knowledge that his prediction was false." Nor, given that Huntington's burden of proof is by clear and convincing evidence, is there a triable issue that Miller fraudulently misled Howell about the true value of the stock. The record contains at least six appraisals of the stock's value in 1983, and they differ tremendously. Given the disparate figures before him, there was no way for Miller to know with any certainty the true value of the stock. Miller relied upon the Cadenasso appraisals, which were substantially similar to the amount arrived at in negotiations with the IRS. Given that the IRS ultimately agreed to a valuation of $517.00, Miller was not reckless in disregarding the IRS's earlier $5,988.00 valuation. Miller does appear to have disregarded Hall's hypothetical valuation, but this was not reckless since he did so at Hall's direction. Failing to disclose Hall's tentative appraisal of $1000.00 per share, which was later withdrawn as without substantiation, cannot be not a material misrepresentation. In any event, it is undisputed that John Howell knew that the value of the stock was disputed, and that at least the IRS had once thought it was worth 17 times what Cadenasso (and Miller Nash) thought it was worth.
 
 
 12
 Huntington also submits that Miller fraudulently misled John Howell by providing financial statements that carried the company's timberlands at book value, without disclosing their actual value. Assuming that Huntington is a proper party to raise this issue, there is no evidence that John Howell looked to Miller for advice on the sales value of the block of stock held by the Trust. In any event, apart from the IRS appraisal whose bottom line John Howell had knowledge of, and a letter from Dempsey that questioned whether the timber ought to be reflected at book value, there is no evidence that Miller knew a true value of the timberlands. Finally, as John Howell was told that the value of the company is different from the value of an interest in the company, and as it is undisputed that neither the trustees nor Miller Nash had knowledge of any plan to sell the company, it is not reasonable to infer from what Gilchrist Timber was sold for several years later that Miller had actual knowledge, which he failed to disclose, that the Cadenasso appraisal of the Howell stock was false.
 
 
 13
 Huntington also points to Miller Nash's failure to tell John Howell that the company's Subchapter S status gave him more bargaining power, not less, and that other shares of Gilchrist Timber stock had been sold in 1967 under similar circumstances for a premium price of $625 per share. Again assuming that Huntington has standing, we fail to see any triable issue that either omission was material by clear and convincing evidence. John Howell in fact asked for and got $650 per share before he consented to the trustee's sale of the Howell stock.
 
 II
 
 14
 Huntington next argues that the "special relationship" between Miller Nash and the Trust and its beneficiaries permits them to recover for negligent misrepresentation based on Miller's failure to disclose the possibility of petitioning for reformation of the trust and the "true" value of the stock.
 
 
 15
 In Oregon, "a negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." Onita Pacific Corp. v. Trustees of Bronson, 843 P.2d 890, 896 (Or.1992) (footnote omitted). In particular, in the normal buyer-seller transaction, a party cannot recover for economic losses arising from a negligent misrepresentation. Id. at 897.
 
 
 16
 Huntington argues that Onita does not preclude recovery because Miller Nash owed a fiduciary duty to Howell and the other trust beneficiaries. As we have already explained, however, there is no triable issue that Miller Nash represented Frank and Stewart Gilchrist in their capacity as trustees during the sale of stock. For this reason, Huntington's expert's opinion that Miller Nash violated its duty to the beneficiaries, see Hale v. Groce, 744 P.2d 1289, 1290 (Or.1987) (holding that an attorney's breach of fiduciary duty to his client may give rise to liability not only to the client but also to an intended beneficiary), does not raise a genuine issue, because it is premised on the assumption that Miller was representing the trustees. Absent any evidence of a fiduciary relationship, the stock sale is the sort of buyer-seller negotiation that, under Onita, cannot give rise to a claim of negligent misrepresentation.
 
 III
 
 17
 Huntington challenges the district court's denial of its motion to compel production of documents. We review the denial of discovery for abuse of discretion. Foster v. Arcata Assocs. Inc., 772 F.2d 1453, 1467 (9th Cir.1985).
 
 
 18
 Miller filed its motion for summary judgment on July 1, 1993. A month later, the parties stipulated that all discovery relevant to dispositive motions had been taken. Three months later, after the court had already heard oral argument on the summary judgment motion, Huntington filed a motion to compel production of documents. The district court denied this motion, noting that the proper approach would have been for Huntington to file a motion under Fed.R.Civ.P. 56(f) prior to oral argument. We have held that it is not an abuse of discretion to deny additional discovery where the party failed to move under Rule 56(f). Id. at 1467. Accordingly, the denial of Huntington's request for additional discovery was not an abuse of discretion.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3